OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVER HILSENRATH,<br><br>                                   **Plaintiff,**<br>                                          **v.**<br><br>EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, AND DOES 1-10,<br>                              **Defendants.** | **Case No. 3:07-CV-4162JCS**<br><br>**COMPLAINT FOR OBSTRUCTION OF JUSTICE AND VIOLATION OF THE FIFTH AND THE SIXTH AMENDMENT RIGHT OF DUE PROCESS**<br><br>        **[JURY TRIAL DEMAND]** |

## INTRODUCTION

1.    In 1997, Equity Trust (Formerly Matheson Trust and Insinger Trust) formed for plaintiff a plan to save a portion of his salary in a tax-deferred fashion.

2.    Plaintiff made monthly deposits in the tax deferred vehicle for almost three years between the years 1997 and 2000.

3.    Between 2002 and 2007 the US government investigated the mater of the monthly deposits under suspicion of fraud and tax evasion.

4.    In that same timeframe the US government conducted several visits and interviews in Jersey and was supplied with approximately 30 banker's boxes of records by Equity Trust.

5.    The records showed no trace of the tax-exempt nature of the deposits, thus supporting the US government's suspicions.

6.    In 2005 it became clear that Equity Trust had systematically destroyed records attesting *inter alia* to the tax-exempt nature of the monthly deposits.

7.  The records however became available from a different source.

8.  In furtherance to their efforts to bring to plaintiff's conviction Equity Trust also refused plaintiff's family access to their assets still kept in trust at Equity Trust.

9.  Those funds were critical for the purpose of hiring legal counsel to defend plaintiff's case in the US.

10. In 2007, faced *inter alia* with the admission by Jersey authorities and by Equity Trust that the exculpatory records are inexplicably "missing", the district court and the US government entered a disposition agreement with plaintiff and brought the government's case to an end.

11. Only after the above case was concluded, and as the result of personal intervention of the US prosecutor and the Jersey authorities, were some of the Hilsenrath family assets ultimately released by Equity Trust.

12. Plaintiff Oliver Hilsenrath is seeking by way of this complaint to recover damages resulting from (1) Equity Trust's acts to obstruct justice in Federal Court, and (2) Equity Trusts prevention of access to funds to hire counsel of choice in breach of plaintiff's constitutional rights of due process.

13. Further, plaintiff will seek an order to (1) ban Equity Trust to conduct business in the US or with US persons, and (2) compel Candover to instate and maintain a fraud prevention plan in its US holdings.

## THE PARTIES

Plaintiff

14. Plaintiff Oliver Hilsenrath is a scientist, both Israeli and US citizen, and resident of California. Oliver HILSENRATH was the founder, Chairman and CEO of US Wireless Corporation of San Ramon California.

Defendants

15. Equity Trust (Jersey) Limited (EQUITY) is a Jersey/UK based trust company soliciting clients in both Israel and the USA.

16. Candover Investments PLC (CANDOVER) is a UK corporation that controls Equity Trust since 2003 and exercises a controlling role over the management of Equity Trust.

17. Throughout the relevant decade 1996-2007 Equity Trust had also been known as Matheson Trust and Insinger Trust. Its operations and employee base stayed the same.

18. At all relevant times to this complaint Melvyn Kalman (KALMAN), John Perkins (PERKINS), Grant Brown (BROWN) and Caroline Bougeard (BOUGEARD) were executives of Equity Trust.

19. Kalman left Equity Trust in 2003. Perkins left Equity Trust in 2005, Brown left in May 2007 and Bougeard is still with Equity at present.

## JURISDICTION AND VENUE

20. The Federal Court has jurisdiction over this case and the venue in the Northern District of California is adequate pursuant to *28 U.S.C. §1331, §1332*.

21. Plaintiff is US citizen and resident of the northern district of California.

22. Defendants are foreign (non-US) corporations and foreign citizens.

23. The complaint refers to the past and present solicitation of services by Equity Trust of the plaintiff, his publicly traded company and the public in the United States.

24. The subject of the complaint refers to US taxes and corporate maters of US Wireless Corporation, a publicly traded company operating out of San Ramon California.

25. This case is related to federal *Case 3:03-cr-00213-WHA USA v. Hilsenrath, et al.*

26. The alleged obstructions of justice and interference with due process occurred in relation with the above case in the Northern District of California

## LIMITATIONS OF STATUTE

27. This present complaint refers to events arising from *Case 3:03-cr-00213-WHA USA v. Hilsenrath, et al*.

28. This case was concluded in July 2007. No limitations of statute are therefore applicable to this complaint.

## GENERAL ALLEGATIONS:

29. In 1996 plaintiff Oliver Hilsenrath was appointed CEO of US Wireless. His employment agreement called for an annual salary of $160,000 with 15% annual increases.

30. In 1996 Equity Trust (then Matheson Trust) solicited plaintiff to use their services to manage his assets as an Israeli citizen working in the US and by that to mitigate the two tax systems, the US and the Israeli, which have at times conflicting regulations.

31. Equity Trust presented its expertise with clients in both countries.

32. In 1997, plaintiff consulted with Perkins and others at Equity Trust on ways to create a savings plan in which part of his salary, that was higher than the basic needs of the Hilsenrath household, would be saved in trust and accessed later if and when needed.

33.  Equity proposed a plan of deferred salary by means of monthly payments into a Jersey entity named Telecom Associates (TA) – an entity with an "exempt" tax status.

34.  That way taxes would be paid later only when and where the funds were to be accessed by plaintiff or his family.

35.  Between 2002 and 2005, the US government initiated a probe into the TA distributions.

36.  The US government sent twice, in 2003 and 2005, missions to Jersey to interview Kalman, Perkins and others and proceeded with discovery of tens of thousands of pages of records related *inter alia* to those distributions.

37.  Equity Trust and its employees stated that they had no records of TA having been assigned a tax-exempt status.

38.  Equity Trust and its employees also stated in documented interviews that as a matter of policy they do not advise clients on tax matters

39.  Equity trust had destroyed the records attesting to the tax-exempt nature of TA at al.

40.  The objective of the false testimony and the destruction of documentation were to keep Equity out of a criminal tax prosecution in the US and to facilitate Plaintiff's conviction.

41.  This was particularly important to Equity Trust given their ongoing operation in the United States. Equity Trust did not want its business platform and business practices to be at the center of a fiscal criminal case in the United States.

42.  However, in 2005 a package of documents was made available to plaintiff by an independent source related to Equity Trust.

43.  That package included *inter alia* the missing records from Equity's files that established the tax-exempt status of TA.

44.  Plaintiff brought those records to the attention of the District Court and the US attorney in San Francisco.

45.  The US attorney in San Francisco contacted the Jersey authorities to complain that Equity Trust's discovery of documents was incomplete and apparently edited to impeach plaintiff.

46.  Upon a new investigation by the US and Jersey authorities, Equity admitted that it "could not locate" those documents in its records. Equity Trust had destroyed the critical documents.

47.  The US government was significantly relying on Equity Trust's documentation and testimony in its criminal prosecution of plaintiff. In view of the obvious attempt of Equity to entrap plaintiff, the US government and the Court entered a disposition agreement with plaintiff and the criminal case was brought to an end.

48.  In order to further Equity's scheme to entrap plaintiff and lead to his conviction, Equity also denied plaintiff access to his and his family assets still held by Equity.

49.  Those assets were critical in allowing plaintiff to hire counsel to defend the case in the US.

50.  Due to the acute and prolonged denial of access to assets, plaintiff's case had been handed over by the Court in San Francisco to the federal public defender: Messrs Barry Portman and Steve Kalar, two of the most respected criminal defense attorneys in the district.

51.  Mr. Kalar wrote to Grant Brown, director at Equity Trust, twice to compel release of plaintiff's funds held by Equity.  These funds were to be used for plaintiff's legal assistance.

52.  Equity's Grant Brown refused Messrs Portman and Kalar twice, in insolent language, access to the funds, rendering plaintiff with no ability to defend himself.

53.  In February 2006 Mr. Kalar, the public defender wrote to Equity Trust as follows:

**"Dear Mr. Brown,**

**I am the Senior Litigator in the Office of the Federal Public Defender, Northern District of California. I have been appointed to represent Mr. Oliver Hilsenrath in a federal criminal action now before the Honorable William H. Alsup. As you may know, in the United States public defenders are appointed to represent defendants in criminal cases when a court determines that the defendant is indigent. In large part because of the actions of Equity Trust, my client has been determined to be indigent – a determination which has resulted in my appointment.**

**Mr. Hilsenrath does not want to be represented by a public defender. Instead, he wishes to retain private counsel to represent him in this criminal proceeding. I am informed that he has requested that funds be released from the Hilsenrath Family Trust (Firefly Trust) to permit him to retain private counsel. I am also informed that the Equity Trust has not done so.**

**I have spoken at length to the Assistant United States Attorney who is prosecuting the federal criminal case mentioned above. She informs me that there is no freeze by the Jersey government of the funds sought.**

**In light of my client's previous requests for release of funds, and in light of my formal request in this letter, please immediately release the funds previously identified to Mr. Hilsenrath.**

**If Equity Trust declines to release these funds, please respond to me in writing its bases for the continued retention of these assets. I am hard-pressed to imagine a more compelling need for funds than for the effective defense of a federal criminal case. It is unclear why Equity Trust has not released the funds thus far.**

1
2
3
4
5
6

        **Should Equity Trust decline to release the funds, please note that I will be pursuing all available legal remedies on behalf of my client. Specifically, I anticipate litigation on the Trust's seizure of these funds before the Honorable William Alsup. If the funds will not be released, please also provide the name and contact information for your counsel in the United States who will represent the Trust in this anticipated litigation.**

        **Thank you for your prompt attention to this matter. I look forward to prompt release of the funds, or to your explanation for the continued seizure."**

7

54.     In February 2006 Equity's Grant Brown responded as follows:

8
9
10
11
12
13

        **"I confirm that it is the case that Mr Hilsenrath has requested the Trustee *to* make Trust funds available to him in order that he may defend the proceedings against him and that the trustee of the Trust has declined to acquiesce to his request. The trustee of the Trust has reconsidered your further request and declines to accede to your request. The Trustee does not hold the Trust property for Mr Hilsenrath under a bare trust or nominee arrangement and Mr Hilsenrath and /or any representative of Mr Hilsenrath cannot instruct the Trustee to adopt a particular course of action in order to benefit him.**

14
15
16
17

        **The trustee of the Trust Is the legal owner of the Trust property and is obliged by fiduciary and statutory duties (inter alia) to act impartially in the interests of all of the beneficiaries of the Trust (in the sense of fairly and disinterestedly) and to preserve and enhance the Trust assets. The trustee of the Trust may exercise its dispositive powers in its absolute and unfettered discretion so that the trustee is not obliged to disclose its reasons or deliberation process.**

18
19

        **Finally, there is no question of the Trust's "seizure" of its own assets."**

20
21
22

55.     In a further attempt to help plaintiff Oliver Hilsenrath and his family to access the desperately needed funds held by Equity Trust, Mr. Kalar, the public defender, writes to Equity Trust again on March 3, 2006:

23
24
25

        **"If the trustee maintains his or her position that the funds will not be released for the retention of counsel, I wish to initiate an appeal of that decision. Is there a provision for an internal review of the trustee's decision? If so, please forward me the information and applications necessary to initiate such an appeal.**

26
27

        **Alternatively, Mr. and Mrs. Hilsenrath – as the sole adult beneficiaries – wish to initiate an action to dissolve the trust and for its assets to be distributed to the beneficiaries. Please advise as to the process necessary to begin the dissolution process."**

28

56.   Equity Trust and its employees continued the relentless effort to see plaintiff Hilsenrath convicted. Brown writes to the public defender back as follows later in March 2006:

> **"I note your position as an Assistant Federal Public Defender paid by the United States government. I further note your comment that Mr Hilsenrath does not wish to be represented by a public defender in the criminal proceedings against him in the United States.**
> **I reiterate the point in my previous fax that it is a matter for Mr Hilsenrath as to whom he wishes to appoint to defend him in these proceedings and what arrangements he wishes to make to discharge the corresponding fees and costs.**
> **Mr Hilsenrath does not have a fixed proprietary interest in the property comprised in the Trust fund.**
> **He therefore has no entitlement to demand that the Trustee makes any distribution of Trust property to him.**
> **Pursuant to the *Trusts* (Jersey) Law *1984* (as amended), subject to the terms of the trust and any order of the court (the "Court"), the Trustee is not under any obligation to disclose his deliberations as to the manner in which he has exercised a power or discretion and the reason for any particular exercise of such power or discretion.**
> **Should Mr Hilsenrath, as a beneficiary of the Trust, wish to challenge the resolution of the Trustee not to release funds to him then we advise that he appoints Jersey counsel to make an application to the Court on his behalf accordingly."**

57.   Brown and Equity Trust were cynically and disingenuously inviting plaintiff to travel to Jersey and litigate in a Jersey court, while aware that the Hilsenraths are struggling to survive a US criminal action - handled by the US public defender as the result of the lack of resources.

58.   Brown and Equity needed to see plaintiff convicted and put away, therefore, after having destroyed critical records they were now denying him access to his family's own savings.

59.   Equity's innuendo that they might be bound by the Jersey authorities or the Jersey court not to distribute assets to the Hilsenraths turned shortly thereafter to have been bogus.

60.   As the result of further intervention of the US government it became clear that no Jersey authority ordered Equity to hurt plaintiff and retain his family assets.

61.   The refusal to allow access to funds was a plot by Equity Trust to further obstruct justice and hinder due process in the US district court.

62.   Ultimately in early 2007 Equity Trust was forced by a joint effort of the US and Jersey governments to distribute the assets shortly after the criminal case in the US was resolved.

63.   In conclusion, Equity Trust -

      a.   Destroyed critical records attesting to the tax exempt nature of TA;

      b.   Mislead authorities as to the nature of their tax advice saying that it is not their practice to give tax advise to their clients;

      c.   Prevented plaintiff access to his family funds to intentioanlly hamper legal assistance of choice in defeat of due process.

64.   While acting as described above, Equity Trust continued and continues to maintain an active office in New Your City, in the United Sates, through which it continue to offer tax guidance and instruments to US persons.

65.   Equity Trust states from its website that it keeps an active division in New Your City devoted solely to:

> **Quote: "assists US clients with the establishment of international structures and provides for related corporate trust and management services"**

66.   To leave no doubt as to Equity Trust's commitment to the American client, Equity Trust's website further states:

> **Quote: "Equity Trust is the preferred service provider for North American multinationals and medium-sized companies. We offer a one-stop sales office located in New York.**
>
> **We establish vehicles for North American corporate clients in many Equity Trust jurisdictions including Luxembourg, the Netherlands, the Netherlands Antilles and the Cayman Islands. Additionally we can offer services in Aruba, British Virgin Islands, Hong Kong, Jersey, Argentina, and Switzerland."**

67.   As to Equity Trust's practice of offering their American clients "tax-efficient" counsel, Equity Trust advertises on the Internet their product tailored specifically for the US clients: "The Efficient Tax Wrapper" whose name and objective speaks for itself:

1

> **Quote: " 'US Tax Efficient Wrappers'**
>
> **"For the US persons (i.e. US citizens or one considered a US tax "resident") finding an investment product that meets all of these goals is rather difficult. US persons are subject to income tax on their worldwide income, that is, they must pay tax on all varieties of income items regardless of the geographic source. US persons are required to provide detailed information to the US government concerning their interests in foreign bank accounts and private foreign corporations."**

68.  For those US persons interested in keeping their money in an Equity Trust "wrapper", Equity trust is however directing the US persons - not to their New York Office - but rather to a remote Hong Kong location, as far as possible from potential US law enforcement:

> **Quote: "ENQUIRIES: Vincent Kwok (2106 9323), Joey Lam (2106 9309), Edith Fok (2106 9319), Brandon Tang (2106 93381, Lisa Cheung (2106 9329) and Irene Chan (2106 9313)**
>
> **EQ INTERNATIONAL**
> **16/F Standard Chartered Bank Building, 4-4A Des Voeux Rd Central, Hong Kong; Tel +852 2525 5090, Fax +852 2523 5105, E-mail: corpsaleshk@asia.equitytrust,com**
>
> **A branch of EQ Corporate Management (HK) Ltd"**.

69.  Equity Trust's employees like Melvyn Kalman, who testified under oath that he does not advise their clients on fiscal matters, continue undisturbed to present themselves as tax experts around the world.

70.  In 2005, just weeks after testifying to the US mission in Jersey saying that he does not give tax advise to his clients, Kalman participated in a client convention widely attended by technology entrepreneurs like Oliver Hilsenrath in which he said:

> **Quote: "…Melvyn continues, "Specifically, we have developed a solid reputation for delivering innovative tax solutions. One example is a product originally developed for the UK market, the Protected Cell Solution, which provides clients with a solution to mitigate capital gains tax within an investment portfolio."**

1

2

## FIRST CAUSE OF ACTION

### (Cost of Disposition)

3

4

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

5

6

Plaintiff settled the dispute with the US government in a situation of uncertainty as to the propriety or impropriety of the tax advice offered by Equity Trust as the result of the vast destruction of records by Equity trust employees[1].

7

8

71.     Plaintiff is entitled to defendants' repayment of all costs related to that disposition according to proof.

9

WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth below.

10

11

## SECOND CAUSE OF ACTION

### (Cost of litigation)

12

13

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

14

15

16

72.     Plaintiff had to conduct a years-long litigation caused by Equity Trust's destruction of the exculpatory records and the associated misrepresentation by employees of Equity Trust in relation to *inter alia* their tax advice.

17

18

73.     Plaintiff is entitled to defendants' repayment of all costs incurred in the above litigation as the result of their conduct according to proof.

WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth below.

19

20

21

22

23

24

25

26

27

28

---

[1] **Leon v. IDX Sys. Corp., 464 F.3d 951** A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed. Moreover, because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case. Prejudice can be found when a party's refusal to provide certain documents forces the other party to rely on incomplete and spotty evidence at trial.

  -------------

**In re Holocaust Victim Assets Litig., 302 F. Supp. 2d 59** It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. An adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

1

2

**THIRD CAUSE OF ACTION**

**(Cost of obstruction of due process)**

3

4

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

5

74.    Plaintiff had to conduct years of litigation without access to legal assistance of choice in a complex and perilous criminal case.

6

7

75.    The lack of access to legal counsel of choice was a direct result of defendants' purposeful and malicious prevention of access to assets.

8

9

76.    Plaintiff is entitled to repayment of expenses and financial damages related to defendants' malicious refusal of access to trust funds according to proof.

10

WHEREFORE, plaintiff Oliver HILSENRATH prays relief as set forth below.

11

12

**FOURTH CAUSE OF ACTION**

**(Constructive trust)**

13

14

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

15

77.    Plaintiff is entitled to a constructive trust on all awards.

16

WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth below.

17

18

**FIFTH CAUSE OF ACTION**

**(Exemplary Damages)**

19

20

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

21

78.    Plaintiff is entitled to exemplary damages as the result of defendants' conduct.

22

79.    Plaintiff is entitled to triple damages associated to causes of actions one, two and three according to proof.

23

24

80.    Triple damages are warranted by Cal. Civil Code §52 "denial of civil rights – unlawful practices"

25

WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth below.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIXTH CAUSE OF ACTION**

**(Court order to prevent Equity Trust to direct its business to and solicit clients in the United States of America)**

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

81.     Defendants collectively violated all standards of fair financial and banking business towards plaintiff, their client.

82.     No person should be solicited or exposed to the abuse and malicious behavior of defendants.

83.     The very actions and modes of operation of Equity Trust constitute an ongoing threat to the American public.

84.     Defendants' actions brought them to a point of no return.

85.     Plaintiff requests the Court's order to ban Equity Trust from conducting any type of business, direct or indirect targeted to the United States, its citizens or residents.

**SEVENTH CAUSE OF ACTION**

**(Court order to compel Candover to conduct an ongoing fraud prevention plan in its holdings in the United States of America)**

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

86.     Candover has partnered, co-managed and reaped the fruits of illegitimate and immoral business practices.

87.     No person in the US should be further exposed to such Candover conduct.

88.     Candover controls and co-manages numerous businesses with thousands of employees in the United States.

89.     Plaintiff requests the Court's order to compel Candover to instate and conduct an ongoing fraud prevention plan in its holdings in United States of America.

**PRAYER**

90.    By way of this complaint, Oliver HILSENRATH prays relief as follows:

    a.    That Oliver HILSENRATH recover damages related to the disposition of the case in the US related to defendant's destruction of records and misrepresentations according to proof.

    b.    That Oliver HILSENRATH recover damages according to proof related to the prolongation of the criminal case and associated litigation, caused by the destruction of Equity of exculpatory records, recovered later through third parties.

    c.    That Oliver HILSENRATH recover all damages related to the obstruction of due process by Equity through malicious prevention of access to funds with ill intent - according to proof.

    d.    That plaintiff recover prejudgment interest on all awards.

    e.    That Oliver HILSENRATH recover damages and exemplary damages resulting from defendants' malicious acts according to proof.

    f.    That the Court order to ban Equity Trust from doing business in the United States or soliciting US persons.

    g.    That the Court order to compel Candover to instate and conduct an ongoing fraud prevention plan in its companies in United States of America.

    h.    That this Court award such other and further relief as it deems proper.


Dated: August 14, 2007


    Respectfully submitted,



              _____/s_____

              OLIVER HILSENRATH