OLIVER HILSENRATH
822 Eastbrook Ct.
Danville, CA 94506
Telephone: 925.212.6299
Facsimile: 925.736.7571
Email: oliver_hilsenrath@sbcglobal.net

PLAINTIFF *PRO SE*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH AND OLIVER HILSENRATH, <br><br> Plaintiffs, <br><br> v. <br><br> EQUITY TRUST (JERSEY) LIMITED, CANDOVER INVESTMENTS PLC, INSINGER DE BEAUFORT SA, JARDINE MATHESON HOLDINGS LIMITED, GRANT BROWN, MELVYN KALMAN, JOHN PERKINS, CAROLINE BOUGEARD, AND DOES 1-10, <br><br> Defendants. | Case No. 3:07-cv-3312 CW <br><br> **OPPOSITION TO ADMINISTRATIVE MOTION [DOC 48] TO RELATE CASE 3:07-cv-04162-JCS TO CASE 3:07-cv-3312-CW, ET AL** |

1. Oliver Hilsenrath opposes Candover's motion [Doc 48] to relate the <u>new</u> case 3:07-cv-04162-JCS to the <u>earlier</u> cases CASE 3:07-cv-3312 CW, et al.

2. Oliver Hilsenrath already petitioned another court (WHA) to consider the relation between the <u>new</u> case 3:07-cv-04162-JCS and the <u>earlier</u> cases 3:03-cr-00213 WHA and 3:03-cv-03252-WHA[1].

---

[1] a trailing civil SEC action

1  While it is true that Oliver Hilsenrath and Candover PLC are parties in the cases in the above paragraph (1), the facts and the matters to be adjudicated are different and are related to the cases in the above paragraph (2).

The facts and causes of action in the <u>new</u> case relate to Equity and Candover's elimination of records in the matter of Telecom Associates LTD and their conduct to prevent Oliver Hilsenrath access to his family's savings with purpose to defeat due process in cases 3:03-cr-00213 WHA and 3:03-cv-03252-WHA.

Candover also contended that it would be burdensome to participate in multiple concurrent litigations.

The Court should reject this argument.

Candover has been litigating in a multitude of US Federal Courts. Earlier in 2007, in the District Court of Houston, Candover's US operations (Vetco Gray and Vetco Aibel) pleaded guilty to the largest corruption case in the history of the US FCPA – the US foreign corruption act[2].

Candover cannot expect to consolidate in the District Court of Oakland its flurry of federal cases.

Dated: August 24, 2007

Respectfully submitted,

OLIVER HILSENRATH

Plaintiff *PRO SE*

 /s/ Oliver Hilsenrath 

---

[2] In an earlier pleading in this case Candover also represented that they do not have any business in the United States and therefore do not avail themselves to US Federal Jurisdiction.

/ATTACHMENTS/

(1) Candover control of Vetco

(2) Vetco guilty Plea



# Press release archive

## 3i, Candover and JPMorgan Partners sell Vetco Gray for US$1.9bn

08 January 2007

A private equity syndicate comprising Candover*, 3i and JPMorgan Partners** today announce the sale of Vetco Gray to GE's Oil & Gas division for an enterprise value of US$1.9 billion (€1.5 bn) on a debt-free, cash-free basis. Completion of the deal is expected in February 2007.

The sale of Vetco Gray, and the spin out of Vetco Aibel, marks a partial exit from Vetco International for the syndicate, which acquired the business in July 2004 from ABB Oil & Gas.

Vetco Gray, headquartered in Houston, is one of the world's leading suppliers of drilling, completion and production equipment for on and offshore oil and gas fields, including Subsea applications. The business, which is expected to generate over $1.6 billion of sales in 2006, employs 5,000 people worldwide in more than 30 countries.

Candover, 3i and JPMorgan Partners will remain as shareholders in the other operating subsidiary company, Vetco Aibel, a leading provider of upstream oil and gas production facilities, process systems, technology, services and products. From new build to decommission, it maintains, modifies and operates on and offshore oil & gas production facilities. The business operates across 17 countries with over 5,000 professionals. The business will be renamed Aibel.

Commenting on the sale, the private equity syndicate commented:

"Vetco International has performed strongly under our ownership, and generated an impressive return in under three years. Under the leadership of Peter Goode, management have driven tremendous growth in sales and EBITDA. Rising oil and gas prices, and the associated increase in oil and gas drilling and production have further advanced Vetco International's performance.

"We retain Aibel, an exceptional business, and look forward to harnessing and furthering the growth prospects of the company. We have every confidence that both businesses will continue to expand and take advantage of the current market environment, and we wish the management and staff at Vetco Gray every success."

Commenting on the syndicate's continued investment in Aibel, Vetco International CEO Peter Goode said:

"The Vetco International management team has established a strong and successful working relationship with the private equity syndicate over the past two and a half years and we are delighted that this will continue under our extended ownership of Aibel. With the sale of Vetco Gray now agreed, management's focus will be to grow Aibel organically and secure an attractive exit for the private equity syndicate in an appropriate time frame."

*Candover means Candover Investments plc and / or one or more of its subsidiaries, including Candover Partners Limited as General Partner of the Candover 1997 and 2001 Funds and as Manager of the Candover 2005 Fund.

** JPMorgan Partners refers to J.P. Morgan Partners, LLC and its controlled investment vehicles.

**Notes to editors**

3i is a world leader in private equity and venture capital with operations in Europe, the United States and Asia. 3i is active across all stages of funding. From early-stage venture capital to growth capital, buyouts and infrastructure, 3i invests approximately €2bn a year in some of the most exciting and ambitious companies in the world. 3i is the only FTSE 100 company in its sector and has total funds under management of £7.0bn (€10.4bn).

3i's oil, gas & power team manages an investment portfolio with a value of $1bn across the UK, Norway, USA and Singapore. The current portfolio includes EDP, an oilfield development project manager and Noreco, a Norwegian independent exploration and production company. Successful realisations include Petrofac, the international oil and gas facilities service provider, which floated in October 2005; Revus Energy, the independent Norwegian upstream company, which floated in June 2005; and CH4 Energy, a leading exploration and production company, which was acquired by Venture Production plc in August

© 3i plc 2007



# Department of Justice

**FOR IMMEDIATE RELEASE**        **CRM**
**TUESDAY, FEBRUARY 6, 2007**        **(202) 514-2007**
**WWW.USDOJ.GOV**        **TDD (202) 514-1888**

## Three Vetco International Ltd. Subsidiaries Plead Guilty to Foreign Bribery and Agree to Pay $26 Million in Criminal Fines

*Separate Subsidiary Enters into a Deferred Prosecution Agreement Following Cooperation with Justice Department*

WASHINGTON – Vetco Gray Controls Inc., Vetco Gray Controls Ltd., and Vetco Gray UK Ltd., wholly owned subsidiaries of Vetco International Ltd., have pleaded guilty to violating the anti-bribery provisions of the Foreign Corrupt Practices Act, or FCPA, Deputy Attorney General Paul J. McNulty announced today.

At a hearing today before U.S. District Judge Lynn N. Hughes in the Southern District of Texas, the companies pleaded guilty to violations of the anti-bribery provisions of the FCPA, as well as conspiracy to violate the FCPA. Additionally, Aibel Group Ltd., another wholly owned subsidiary of Vetco International, simultaneously entered into a deferred prosecution agreement with the Justice Department regarding the same underlying conduct. As part of the plea and deferred prosecution agreements, it was agreed that Vetco Gray Controls Inc., Vetco Gray Controls Ltd., and Vetco Gray UK Ltd. would pay criminal fines of $6 million, $8 million, and $12 million, respectively, for a total of $26 million. This total fine amount represents the largest criminal fine to date in a FCPA prosecution by the Justice Department.

In the charging and plea documents, Vetco Gray Controls Inc., Vetco Gray Controls Ltd., and Vetco Gray UK Ltd. admitted that they violated and conspired to violate the FCPA in connection with the payment of approximately $2.1 million in corrupt payments over approximately a two-year period to Nigerian government officials. These corrupt payments were paid through a major international freight forwarding and customs clearance company to employees of the Nigerian Customs Service, and coordinated largely through Vetco Gray Controls Inc.'s offices in Houston. Additionally, Aibel Group Ltd. agreed in its deferred prosecution agreement to accept responsibility for similar conduct by its employees.

As the charging and plea documents reflect, beginning in February 2001, Vetco Gray UK began providing engineering and procurement services and subsea construction equipment for Nigeria's first deepwater oil drilling project, the Bonga Project. Several Vetco Gray UK affiliates, including Aibel Group Ltd., Vetco Gray Controls Inc., and Vetco Gray Controls Ltd., supplied Vetco Gray UK with employees and manufacturing equipment for the project. From at least September 2002 to at least April 2005, each of the defendants engaged the services of a major international freight forwarding and customs clearing company and, collectively, authorized that agent to make at least 378 corrupt payments totaling approximately $2.1 million to Nigerian Customs Service officials to induce those officials to provide the defendants with preferential treatment during the customs process.

"This case represents the largest criminal penalty the Department of Justice has ever sought in a Foreign Corrupt Practices case and confirms our commitment to root out corruption," said Deputy Attorney General McNulty. "The Department of Justice will continue its efforts to assure a level playing field for businesses operating abroad."

This is the second time since July 2004 Vetco Gray UK has pled guilty to violating the FCPA. On July 6, 2004, Vetco Gray UK, previously named ABB Vetco Gray UK Ltd., and an affiliated company pleaded guilty to violating the antibribery provision of the FCPA in connection with the payment of more than $1 million in bribes to officials of NAPIMS, a Nigerian government agency that evaluates and approves potential bidders for contract work on oil exploration projects. ABB Vetco Gray UK Ltd. was renamed Vetco Gray UK Ltd. following an acquisition by a group of private equity entities of the upstream oil and gas businesses and assets of its parent corporation, ABB Handels-und Verwaltungs AG ("ABB"). The July 12, 2004 acquisition included the sale of Vetco Gray UK and the predecessors to the two other Vetco International subsidiaries that pleaded guilty today. In anticipation of the July 12, 2004 acquisition, the private equity acquirers requested and the Justice Department issued an FCPA Opinion Release (No. 2004-02) ( http://www.usdoj.gov/criminal/fraud/fcpa/o0402.htm). The Opinion Release required the acquirers to effectively institute and implement a compliance system, internal controls, training, and other procedures sufficient to have deterred and detected violations of the FCPA, among other obligations. The corrupt payments underlying today's guilty pleas continued unabated from the period prior to the acquisition until at least mid-2005, notwithstanding the acquirer's commitments to the Justice Department under the Opinion Release. The sale to new owners, the prior directives issued by the Department of Justice, and Vetco Gray UK's prior FCPA conviction were all taken into account under the U.S. Sentencing Guidelines in calculating the $12 million criminal fine against Vetco Gray UK Ltd.

The resolution of the criminal investigation of Vetco International and its subsidiaries resulted, in large part, from the actions of Vetco International in voluntarily disclosing the matter to the Justice Department and Vetco International's subsidiaries' agreement to take significant remedial steps. In addition to the criminal fines, the plea agreements also require the defendants to: (1) hire an independent monitor to oversee the creation and maintenance of a robust compliance program; (2) undertake and complete an investigation of the companies' conduct in various other countries as originally required under FCPA Opinion Release No. 2004-02; and (3) ensure that in the event that any of the companies are sold, the sale shall bind any future purchaser to the monitoring and investigating obligations.

The criminal case is being prosecuted by Deputy Chief Mark F. Mendelsohn and Trial Attorney Stacey Luck of the Fraud Section, with assistance from Assistant United States Attorney James R. Buchanan from the United States Attorney's Office for the Southern District of Texas.

###

07-075