**EXHIBIT A**

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office. ATTEST

RICHARD W AMBONG
Clerk U.S. District Court
Northern District of California

By
Date JUL 17 2007

FILED

NOV 30 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1 | CHAPMAN, POPIK & WHITE, LLP
J. Michael Matthews, State Bar No. 71848
2 | jmm@chapop.com
Benjamin J. Riley, State Bar No. 226904
3 | briley@chapop.com
650 California Street, 19th Floor
4 | San Francisco, CA 94108
Telephone: (415) 352-3000
5 | Facsimile: (415) 352-3030

6 | Attorneys for Defendant and
Counter-Claimant Oliver Hilsenrath

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | OAKLAND DIVISION

11

12 | JANVRIN HOLDINGS LIMITED,      )   No. C02-1068 CW
CROSSGAR LIMITED, and RYBURN   )
13 | LIMITED,                       )   NOTICE OF MOTION AND MOTION
                                  )   FOR LEAVE TO FILE ANSWER/
14 |     Plaintiffs,               )   AMENDED COUNTERCLAIM/THIRD
                                  )   PARTY COMPLAINT;
15 | v.                            )   MEMORANDUM OF POINTS &
                                  )   AUTHORITIES IN SUPPORT
16 | DR. OLIVER HILSENRATH, et al.,)   THEREOF
                                  )
17 |     Defendants.               )   Date:  January 12, 2007
                                  )   Time:  10:00 a.m.
18 | ─────────────────────────────)   Courtroom 2, 4th Floor
AND RELATED CROSS-ACTION.      )
19 | ─────────────────────────────)   Complaint Filed: March 5, 2002

20

21 |                    **NOTICE OF MOTION**

22 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23 |     Please take notice that on January 12, 2007, at 10:00 a.m., Defendant/Counter-claimant

24 | Oliver Hilsenrath will and does hereby move this court for leave to file an Answer/Amended

25 | Counterclaim/Third Party Complaint in the form attached to this notice and motion as Exhibit 1.

26 | This motion is made in the interests of justice, after Mr. Hilsenrath and counsel have conducted

1  extensive investigation that enables them: 1) to state more specifically the facts and circumstances

2  giving rise to the existing counter-claim, which Mr. Hilsenrath proposes to restate; 2) to identify all

3  of the parties involved in the conduct giving rise to the counter-claim; and 3) to determine that the

4  conduct of counter-defendants and proposed third party defendants damaged the interests of

5  Hana Hilsenrath, Mr. Hilsenrath's wife. Thus it is that by way of the proposed amended pleading

6  Mr. Hilsenrath proposes to state his counterclaim in more detail, add third party defendants, and

7  add Hana Hilsenrath as a third party plaintiff.

8      This motion is based on this notice, the Memorandum of Points & Authorities filed

9  concurrently, the proposed amended pleading, attached to this notice as Exhibit 1, and any other

10  evidence or argument that may be presented at the hearing of the motion.

11

12                              CHAPMAN, POPIK & WHITE, LLP

13                    By: 

14                         J. Michael Matthews

15                         Attorneys for Defendant/Counter-
                           claimant/Proposed Third Party Complainants
                           Oliver and Hana Hilsenrath

16

17          **MEMORANDUM OF POINTS AND AUTHORITIES**

18          **Introduction/Factual and Procedural Background**

19      Plaintiffs are off-shore "shelf companies" operated by Equity Trust (Jersey) Limited, a

20  Jersey Island trust company, for the benefit of two individuals, David Dahan and Haim Haruvi,

21  citizens of Israel. In their original complaint in this action, plaintiffs/Equity Trust sued any and all

22  individuals or entities who were in any way connected with their entry into a settlement agreement

23  with U.S. Wireless Corporation in 2001. Plaintiffs'/Equity Trust's theory was that the defendants

24  had been aware of an internal investigation taking place at the time of the settlement with U.S.

25  Wireless, and that defendants' failure to disclose true facts at the time of the settlement constituted

26

1  fraud and various violations of securities laws. All defendants were dismissed by this court, except

2  Oliver Hilsenrath, the former CEO of U.S. Wireless.

3      The true facts that underlie this action are far more complex and alarming than any of the

4  pleadings reveal. This lawsuit is the latest effort by plaintiffs/Equity Trust and their current

5  attorneys, Glenn Westreich/Nixon Peabody to effect a fraud on this court and to avoid the

6  consequences of their own acts, which led to the downfall of U.S. Wireless and losses to countless

7  investors including Hana and Oliver Hilsenrath. As set forth in the answer, amended counterclaim,

8  and third party complaint which Hana and Oliver Hilsenrath seek leave to file, and in the exhibits

9  attached to it:

10     1.  Equity Trust managed the investments and financial affairs not only of Dahan and

11 Haruvi, using plaintiffs Janvrin, Crossgar, Ryburn and other "shelf companies," but also of the

12 Hilsenraths, and several other directors of/major investors in U.S. Wireless. All of these

13 individuals, through Equity Trust companies, held substantial interests in U.S. Wireless.

14     2.  In 1999, Equity Trust, Dahan and Haruvi, through Janvrin, Crossgar and Ryburn,

15 mounted a proxy fight; Mr. Hilsenrath and U.S. Wireless management had shareholder confidence

16 and defeated the proxy fight.

17     3.  The conflict continued into 2000, after the defeat of the proxy fight. Indeed, in the

18 middle of that year, Equity Trust, for Dahan and Haruvi, and acting through plaintiffs Janvrin,

19 Crossgar and Ryburn, retained Westreich and his then firm Lillick & Charles to file three lawsuits,

20 each of which was venued in this court and assigned to this judge. To gain an advantage in the

21 dispute, Dahan demanded that Equity Trust hand over to him and his attorneys financial

22 information about the Hilsenraths which Equity Trust was bound to keep confidential. Though it

23 had twice obtained advice of counsel that it had a conflict of interests and needed to protect the

24 Hilsenraths' information, Equity Trust told Dahan it had decided to be "totally on his side" in the

25 litigation. In November 2000 it began sending the Hilsenraths' private information to Dahan and

26 Westreich, and in early December it held a meeting in London at which it turned over to Dahan,

1   Haruvi, and Westreich all of the Hilsenraths' files. The group decided to use this "problematic

2   material" to blackmail Oliver Hilsenrath and U.S. Wireless, and began the effort at a Case

3   Management Conference held in this court and before this judge on December 15, 2000.

4        4.      In the maintenance of trusts with Equity Trust the Hilsenraths had done nothing

5   wrong.[1]  Nevertheless, in using the information Equity Trust had turned over, Dahan, Haruvi,

6   Westreich, Lillick & Charles and Equity Trust had unleashed the whirlwind. The Hilsenraths' files

7   were delivered to U.S. Wireless, and an investigation ensued.   Oliver Hilsenrath was relieved as

8   CEO of the company, the market reacted, and U.S. Wireless failed.

9        If the court reviews Equity Trust's/plaintiff's second amended complaint, filed by

10  Westreich,  it will see that, ironically, Equity Trust/plaintiffs contend that Mr. Hilsenrath failed to tell

11  them about the investigation underway at the time they entered into the settlement of the earlier

12  litigation. In fact, as set forth above, and as set forth in detail in the proposed new pleading, Equity

13  Trust/plaintiffs/Westreich themselves were the source of the investigation, and brought about the

14  very failure of the company about which they now complain.

15       Oliver Hilsenrath filed an answer to the second amended complaint on October 14, 2005,

16  and included a counterclaim based what he knew then of these facts.  Since that time, he and

17  counsel have engaged in hours and hours of investigation into this case, and have reviewed boxes

18  and boxes of documents obtained from various sources, mostly through the U.S. government.

19  Through this process Mr. Hilsenrath and counsel have come to understand in detail what was done

20  by Equity Trust, using plaintiffs, with the active participation of Westreich and his firms. Mr.

21  Hilsenrath now seeks leave to amend his counter-claim, to state it in more detail, and to join new

22  parties as third party defendants. In a sense, the third parties are already here:  Equity Trust,

23  _____

24       [1] It is worth noting to this court that the U.S. Attorney's office initially concluded that
    Oliver Hilsenrath had violated various securities laws in the use of the off-shore companies, and it
25  requested that the Swiss government freeze assets the Hilsenraths had on deposit in the country.
    The Swiss complied.  Since then, the government has concluded it was wrong, and has asked the
26  Swiss to unfreeze the assets.

1    Westreich, and his law firm. Mr. Hilsenrath and his wife, Hana, also seek to add Hana as a

2    counter-claimant/third party plaintiff, since she was a signatory to the Equity Trust agreements, and

3    co-owned the assets which were destroyed by all of these parties. Under the federal policy that

4    strongly favors resolving a case on its merits, and freely permits the amendment of complaints to

5    accomplish this objective, this motion should be granted.

6                                **Nature of the Proposed Amendment**

7           A copy of the proposed answer, first amended counterclaim and third party complaint is

8    attached as Exhibit 1. There are three purposes of this amendment. First, Oliver Hilsenrath seeks

9    to clarify and expand the factual basis for his claims against the existing plaintiffs, based on new

10   information and documents he has accumulated. Second, Mr. Hilsenrath seeks to add as

11   defendants Equity Trust, for wrongfully divulging the confidential information, and attorney Glenn

12   Westreich and his firm, Nixon Peabody, for wrongfully using the information. Finally, Oliver

13   Hilsenrath's wife, Hana Hilsenrath, seeks to join her husband as a counter claimant/third party

14   plaintiff because her confidential, private information was also revealed without her consent.

15          Mr. Hilsenrath does not propose to change the answer he earlier filed; the answer that is a

16   part of the proposed amended pleading is identical to his original answer.

17                                            **Argument**

18          Under Rule 15(a) of the Federal Rules of Civil Procedure, the Court is empowered to

19   grant leave to amend a complaint, and such leave "shall be freely given when justice so requires."

20   As the Ninth Circuit has stated, this policy is to be applied with "extreme liberality." *Eminence*

21   *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Furthermore, "where

22   there is lack of prejudice to an opposing party and the amended complaint is obviously not

23   frivolous or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a

24   motion." *Hurn. v. Retirement Trust Fund of Plumbing, Heating & Piping Industry of So.*

25   *Calif.*, 648 F.2d 1252, 1254 (9th Cir. 1981). Under this governing authority, leave to amend

26   should be granted so the counterclaim may incorporate the three changes discussed above.

1  **A.      Under Rule 15, Mr. Hilsenrath should be granted leave to expand and clarify the general allegations that form the basis for his counterclaim.**

2

3          The filing of a lawsuit "warns the defendant to collect and preserve his evidence in

4  reference to . . . the *whole transaction* described in it." *Martell v. Trilogy, Ltd.*, 872 F.2d 322,

5  326 (9th Cir. 1989).   As a result, defendants are aware that claims regarding that transaction may

6  be amended and that the form of relief and law relied upon are not confined to their original

7  statement. *Id.*; *see also In re Coastal Plains, Inc.*, 179 F.3d 197, 216 (5th Cir. 1999).   Under

8  Rule 15(c)(2), amended pleadings "relate back" as to existing parties if the claim or defense arises

9  out of the same transaction set forth in the original pleading.

10         The October 2005 counterclaim against plaintiffs Janvrin, Crossgar and Ryburn consists of

11  five paragraphs of general allegations that state that plaintiffs and their principals and agents

12  received Hilsenraths' personal, confidential information from Equity Trust at the London meeting in

13  December 2005.  At the time the counterclaim was drafted, Mr. Hilsenrath and his attorneys had

14  only just discovered information relating to the London meeting.  Since that time, however, Mr.

15  Hilsenrath and his counsel have obtained additional information—including certain of the specific

16  documents that plaintiffs/Equity Trust/Westreich wrongfully obtained and used—that indicates that

17  plaintiffs, their attorneys and Equity Trust conspired extensively to use Hilsenraths' confidential

18  information in an attempt to gain the upper hand in the litigation and settlement discussions that

19  preceded the U.S. Wireless bankruptcy.

20         Consequently, Mr. Hilsenrath is now prepared to describe in fuller detail in his

21  counterclaim the events and circumstances of the breach of trust by Equity Trust, plaintiffs,

22  Westreich and his firms, as well as the resulting harm he and his wife suffered. The proposed

23  amended pleading provides a detailed history of these parties' acts and the damages they caused.

24  The amended counterclaim will clarify the issues presented for the court's consideration, and thus

25  will simplify issues for trial.

26

1    Plaintiffs/counter-defendants cannot make a tenable claim that they would be prejudiced

2    by this amendment.  The October 2005 counterclaim, currently operative, clearly put counter-

3    defendants on notice that evidence related to the London meeting and the use of Hilsenrath

4    information should be preserved.  For all these reasons, the motion to amend the counterclaim as

5    against plaintiffs Janvrin, Crossgar and Ryburn should be granted.

6    **B.    Under Rules 13, 19 and 20, Mr. Hilsenrath should be permitted to join as**
      **defendants the third parties that obtained and divulged the Hilsenraths'**
7      **confidential financial information to plaintiffs.**

8    Rule 13(h) permits the joinder of additional parties to a counterclaim "in accordance with

9    the provisions of Rules 19 and 20."  Rule 19 in turn permits the joinder of parties "whose joinder

10   will not deprive the court of jurisdiction" and who are needed for just adjudication of the lawsuit, if

11   complete relief cannot be according among the existing litigants.   Rule 20 allows for permissive

12   joinder of defendants "if there is asserted against them [any claim] . . . arising out of the same

13   transaction [or] occurrence . . . ."  Moreover, "under the Rules, the impulse is toward entertaining

14   the broadest possible scope of action consistent with fairness to the parties; joinder of claims,

15   parties and remedies is strongly encouraged."  *United Mine Workers v. Gibbs*, 383 U.S. 715,

16   724 (1966).[2]

17   The conspiracy of Equity Trust and Westreich to use confidential Hilsenrath information to

18   blackmail Oliver Hilsenrath and U.S. Wireless clearly arises out of the same transaction/

19   occurrence that is the subject of the current counterclaim.  Moreover, adding these parties will not

20   deprive the court of jurisdiction, since federal questions are presented both by the second

21   amended complaint and by the proposed counterclaim/third party complaint.

22

23

24   _____

25   [2]Adding Equity Trust as a third party defendant does not really expand the claims asserted.
     As the exhibits to the proposed answer, amended counterclaim/third party complaint reveal,
26   Equity Trust is already here in the action; it created, operates and maintains the plaintiffs, three of
     its "shelf companies."

**C.    Hana Hilsenrath should be allowed to assert her claims for invasion of privacy and related torts.**

Rule 20(a) permits joinder of additional plaintiffs if they assert any right to relief arising out of the same transaction that is the subject of the pending lawsuit.  Here, Hana Hilsenrath, wife of Oliver Hilsenrath, seeks leave to join the action as a third-party plaintiff against Janvrin, Crossgar and Ryburn, and the proposed third-party defendants, to assert the same claims as her husband. Mrs. Hilsenrath was a signatory to the agreements with Equity Trust, and co-owner of the assets destroyed as a result of the counter-defendants'/third party defendants' conduct.

Dated:  November 30, 2006

CHAPMAN, POPIK & WHITE, LLP

By: _____
　　　J. Michael Matthews

Attorneys for Defendant/Counter-
Claimant/Proposed Third Party Complainants
Oliver and Hana Hilsenrath

G:\JMM\Hilsenrath\Pleadings\Motion to file amd complaint etc.wpd

PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is Chapman, Popik & White, 650 California Street, 19th Floor, San Francisco, CA 94108.

On November 30, 2006, I served the following document(s):

NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE ANSWER/ AMENDED COUNTERCLAIM/THIRD PARTY COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

on the parties involved addressed as follows:

**Attys for Pltff Janvrin Holdings**
**Cross-Def Crossgar Unlimited**
**Plaintiff and Counter-Def Ryburn Limited**
Beth L. Mitchell and Glenn Edward Westreich
Nixon Peabody LLP
Two Embarcadero Center, Suite 2700
San Francisco, CA 94111-3996
415/984-8200
415-984-8300 (fax)

✓_____  **BY PERSONAL DELIVERY:** The within document(s) were served by hand in an envelope addressed to the addressee(s) above on this date.

_____  **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid, in the United States mail, at San Francisco, California

_____  **BY FEDERAL EXPRESS OVERNIGHT DELIVERY:** I caused each envelope, with delivery fees provided for, to be deposited in a box regularly maintained by Federal Express.

_____  **BY FACSIMILE:** By use of a facsimile number 415/352-3030, I served a copy of the within document(s) on the above interest parties at the facsimile numbers listed above. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 30, 2006 at San Francisco, California.

_____
Denise Brasher

**EXHIBIT 1**

1   CHAPMAN POPIK & WHITE, LLP
    J. MICHAEL MATTHEWS (State Bar No. 71848)
2   jmm@chapop.com
    MERRI A. BALDWIN (State Bar No. 141957)
3   mbaldwin@chapop.com
    BENJAMIN J. RILEY (State Bar No. 226904)
4   briley@chapop.com
    650 California Street, Suite 1900
5   San Francisco, California 94108
    Telephone:  (415) 352-3000
6   Facsimile:  (415) 352-3030

7   Attorneys for Defendant/Counter-
    claimants/Third-party complainants
8   OLIVER HILSENRATH and HANA
    HILSENRATH

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13

14  JANVRIN HOLDINGS LIMITED,          Case No. C 02 1068 CW (BZ)
    CROSSGAR LIMITED, and RYBURN
    LIMITED,                           **[Proposed]**
15                                     **ANSWER TO SECOND AMENDED**
                   Plaintiffs,         **COMPLAINT; AMENDED COUNTER-**
16                                     **CLAIM AND THIRD PARTY**
         vs.                           **COMPLAINT OF OLIVER AND HANA**
17                                     **HILSENRATH**
    DR. OLIVER HILSENRATH, et al.,
18                                     **[JURY TRIAL DEMAND]**
                   Defendants.
19

20

21  **I.    JURY DEMAND**

22          Defendants Oliver and Hana Hilsenrath reiterate Oliver Hilsenrath's demand

23  for trial by jury in this action, and Hana Hilsenrath herself demands trial by jury.

24  **II.   ANSWER TO SECOND AMENDED COMPLAINT**

25          Defendant Oliver Hilsenrath hereby answers the Second Amended Complaint

26  (which is not stated against Hana Hilsenrath) on file in this action as follows:

27          Pursuant to FRCP 8(b), defendant Oliver Hilsenrath denies that plaintiffs or

28
                                                                        Page 1

    First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
    Hilsenrath and Hana Hilsenrath
    Case No. C 02 1068 CW (BZ)

                                                                        239797.1

1    any of them are entitled to the damages or relief they or any of them seeks, or to any damages

2    or relief at all, and generally denies each and every allegation of the Second Amended

3    Complaint, except those allegations set forth below:

4         1.     Answering Paragraph 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 19, 20, 21, 51,

5    52, 55, 56, 58, 59, 63, 90, 117, defendant Oliver Hilsenrath admits the allegations of these

6    paragraphs.

7         2.     Answering Paragraph 5, defendant Oliver Hilsenrath admits all

8    allegations of this paragraph, except that he denies that as of the date of this answer, he is

9    currently residing in Israel.

10        3.     Answering Paragraph 15, defendant Oliver Hilsenrath admits only that

11   Ed Rosmer was, to the best of defendant's knowledge, an officer of WT Holding Inc., and that

12   he attended meetings of the U.S. Wireless Board of Directors.

13        4.     Answering Paragraph 22, defendant Oliver Hilsenrath admits only that

14   the referenced legal actions were filed.

15        5.     Answering Paragraphs 24, 25, and 26, defendant Oliver Hilsenrath

16   admits only that documents existed and were signed pertaining to "Consulting Agreements"

17   and "Option Agreements," and that those documents say what they say.

18        6.     Answering Paragraph 27, 28 and 29, defendant Oliver Hilsenrath admits

19   only that statements with the SEC were filed and that those statements say what they say.

20        7.     Answering Paragraph 35, defendant Oliver Hilsenrath admits only that

21   documents existed and were signed pertaining to an Exchange Offer Agreement and

22   Memoranda and Exchange election, and that the documents say what they say.

23        8.     Answering Paragraph 37 and 38, defendant Oliver Hilsenrath admits

24   only that statements with the SEC were filed and that those statements say what they say.

25        9.     Answering Paragraph 41, 43, 44, 45, and 47, defendant Oliver

26   Hilsenrath admits only that documents existed and were signed pertaining to a "Confidential

27   Settlement Agreement and Mutual Release" and that the documents say what they say.

28

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1          10.     Answering Paragraphs 48, defendant Oliver Hilsenrath admits only that

2  documents existed and were signed pertaining to a "letter agreement," and that those

3  documents say what they say.

4          11.     Answering Paragraph 54, defendant Oliver Hilsenrath admits only that a

5  press release was issued, and that it said what it said.

6          12.     Answering Paragraph 62, defendant Oliver Hilsenrath admits only that a

7  document entitled "Charter for the Audit Committee of the Board of Directors of U.S.

8  Wireless Corporation" existed, and that it said what it said.

9          13.     Answering Paragraphs 64 and 65, defendant Oliver Hilsenrath admits

10  only that statements with the SEC were filed and that those statements say what they say.

11          14.     Answering Paragraph 66, defendant Oliver Hilsenrath admits only that

12  David Klarman was asked to resign.

13          15.     Answering Paragraphs 69 and 70, defendant Oliver Hilsenrath admits

14  only that statements with the SEC were filed and that those statements say what they say.

15          16.     Answering Paragraph 89, defendant Oliver Hilsenrath incorporates by

16  reference his responses to Paragraphs 47 and 48 of the Second Amended Complaint.

17  **III.   AFFIRMATIVE DEFENSES**

18          1.     Plaintiffs lack standing to pursue the claims they are pursuing.

19          2.     Plaintiffs' claims are barred by various Statutes of Limitations.

20          3.     Plaintiffs' claims are barred by the "litigation privilege" of California

21  Civil Code Section 47(b).

22          4.     Plaintiffs themselves, individually and through their agents and

23  representatives, made a full, unhindered investigation into the matters about which they have

24  brought their claims, and are presumed to have relied on their independent investigation in

25  entering into any transactions with any defendant.

26          5.     Plaintiffs themselves had and have unclean hands, and are barred from

27  any relief.

28

Page 3

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

6.      Plaintiffs themselves were and are *in pari delicto*, and are barred from any relief.

7.      Plaintiffs themselves, individually and through their agents, committed fraud in their negotiations prior to executing the documents upon which they base their claims, rendering those documents void or voidable and barring plaintiffs' claims.

8.      Plaintiffs themselves, individually and through agents, breached various duties they owed defendants, including statutory duties imposed on them by U.S. and foreign law, and committed invasion of privacy and conspiracy among other torts/crimes, barring them from any relief.

9.      Plaintiffs, individually and through agents, subjected defendant Oliver Hilsenrath to economic and personal duress, prior to his executing the documents upon which plaintiffs base their claims, rendering those documents void or voidable, and barring plaintiffs' from any relief.

10.     Plaintiffs' claims are barred by the doctrine of laches.

11.     Plaintiffs' claims are barred by the doctrine of estoppel.

12.     Plaintiffs' claims are barred by the doctrine of waiver.

13.     Defendant Oliver Hilsenrath is entitled to an equitable set-off against any damages for which he might otherwise be liable, in the amount of damages caused by plaintiffs' own breaches of duty.

## IV.    AMENDED COUNTERCLAIM/THIRD PARTY COMPLAINT

By way of counter-claim/third party complaint, defendant/counter-claimant/third party complainant Oliver Hilsenrath, and counter-claimant/third party complainant Hana Hilsenrath complain of cross-defendants Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited and third party defendants Equity Trust (Jersey) Limited, Glenn Westreich, and Nixon Peabody LLP, and each of them, as follows:

### A.    Introduction

In May of 2000, Equity Trust, Glenn Westreich of Lillick & Charles/Nixon

Page 4

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    Peabody LLP, David Dahan, Haim Haruvi, and the nominal plaintiffs in this case, Janvrin

2    Holdings Limited, Crossgar Limited, and Ryburn Limited, began to implement a plan to use

3    personal records and assets of Oliver and Hana Hilsenrath to blackmail a publicly traded

4    company, U.S. Wireless Company Inc. Equity Trust is a trust company based on the Island

5    of Jersey; in 1996 it undertook to manage, protect and augment the assets of the Hilsenraths,

6    Israeli citizens, and it promised to maintain the privacy and confidentiality of the Hilsenrath

7    holdings. Westreich is a California attorney and partner in two prestigious law firms, Lillick

8    & Charles and Nixon Peabody LLP. Despite the legal and ethical restraints upon them,

9    Equity Trust and Westreich, acting through and on behalf of the plaintiffs in this case,

10    knowingly decided to take the private information that the Hilsenraths had entrusted to their

11    fiduciary, Equity Trust, and use it to try to blackmail the Hilsenraths and U.S. Wireless into

12    settlement of three actions that were pending in this court and before this judge, Hon. Claudia

13    Wilken. E-mails and faxes flew, conversations occurred, and in early December 2000, senior

14    officers of Equity Trust met in London with their co-conspirators and delivered to them all of

15    the financial records Equity Trust maintained for the Hilsenraths. In a hallway conference

16    after a case management conference held before this court and before this judge, Westreich

17    informed counsel for U.S. Wireless that he had "problematic material" involving Oliver

18    Hilsenrath. Before he was done, Westreich and Equity Trust had destroyed a publicly traded

19    company that was just at the beginning of its growth.

20            The assets that Oliver and Hana Hilsenrath entrusted to Equity Trust are, and

21    were always, legitimately held and well earned. The Equity Trust/Westreich scheme to

22    blackmail occurred in the very background of this litigation in Federal Court. The outcome of

23    the scheme was the collapse of US Wireless Corporation and a loss to the Hilsenraths which

24    exceeds $500 million. This counterclaim/third party complaint addresses the blackmail

25    scheme, the abuse of the Federal Court as the stage for the blackmail and the overwhelming

26    loss to the Hilsenrath family.

27

28

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

**B.    General Allegations**

I.    Parties

1.    Counter-claimants/third party complainants Oliver and Hana Hilsenrath (referenced collectively as "the Hilsenraths") at all times relevant to this counter-claim/third party complaint have maintained their domicile in Israel.

2.    The Hilsenraths are informed and believe, and on that basis allege, that Equity Trust (Jersey) Limited  ("Equity Trust") is an entity based on the Channel Island of Jersey which has succeeded to all of the assets, liabilities and activities of Matheson Trust Company (Jersey) Limited, Insinger Trust Company Limited, Insinger de Beaufort Trust Company Limited, and Equity Trust Company Limited, entities with which the Hilsenraths did business, as more particularly alleged below.

3.    The Hilsenraths are informed and believe, and on that basis allege, that, Equity Trust and/or its predecessors entered into Company Management Agreements with David Dahan ("Dahan") and Haim Haruvi ("Haruvi"); that Equity Trust created, administered and controlled various companies for Dahan and Haruvi; and that on their behalf Equity Trust administers and controls the plaintiffs in this action, Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited.

4.    The Hilsenraths are informed and believe, and on that basis allege, that there is a unity of interest between Equity Trust on the one hand and plaintiffs Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited on the other; that there is interlocking control of these entities and Equity Trust; and that in the creation, operation and administration of Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited Equity Trust has disregarded their separate corporate forms.  Janvrin Holdings Limited, Crossgar Limited, and Ryburn Limited Equity are alter egos of Equity Trust, and it would be unjust if the court were not to disregard the corporate distinctions between them and Equity Trust.

5.    Glenn Westreich ("Westreich") is an individual and an attorney who resides and does business in the Northern District of California.

Page 6

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    6.    The Hilsenraths are informed and believe, and on that basis allege, that

2    at times relevant to this counter-claim/third party complaint Westreich was a partner of

3    Lillick & Charles, and that he is currently a partner of Nixon Peabody LLP, which has

4    assumed all of the rights, obligations, and liabilities of Lillick & Charles.  At all times

5    referenced in this pleading, Westreich was acting within the scope of his authority first as a

6    partner of Lillick & Charles and then as a partner of Nixon Peabody LLP.  Moreover, Nixon

7    Peabody LLP has ratified all of the acts of Glenn Westreich set forth in this pleading.

8    II.    Factual Allegations

9    7.    In May, 1996, Oliver Hilsenrath incorporated Labyrinth

10   Communications, a company by which he planned to develop, implement and market a

11   technology by which cell phone users dialing the emergency number "911" could be

12   physically located, much as the location of "911" callers over "hard lines" are located by the

13   "911" operators.

14   8.    In July of 1996, by means of a "reverse merger," Labyrinth

15   Communications was merged into ATOY, a publicly traded company listed on the NASDAQ

16   stock exchange.   After the merger, ATOY was renamed U.S. Wireless Corporation ("U.S.

17   Wireless").  As result of the merger, U.S. Wireless became a publicly traded company.  As an

18   additional result of the merger, the Hilsenraths became approximately 40% owners of the

19   issued stock of U.S. Wireless.  Oliver Hilsenrath remained with the merged companies and

20   became Chief Executive Officer of U.S. Wireless.

21   9.    Prior to July, 1996, as U.S. Wireless and ATOY were negotiating the

22   "reverse merger," Oliver Hilsenrath became acquainted with Dahan and Haruvi.  The

23   Hilsenraths are informed and believe, and on that basis allege, here, and as set forth above

24   and below in more detail, that by means of trust instruments and/or other agreements Dahan

25   and Haruvi are beneficiaries for whom Equity Trust created and administers Janvrin Holdings

26   Limited, Crossgar Limited, and Ryburn Limited, plaintiffs in this action, and that Dahan and

27   Haruvi are actual beneficial owners of one or more of these companies.

28

Page 7

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

10.    Prior to July, 1996, as U.S. Wireless and ATOY were *negotiating the "reverse merger,"* Dahan had urged Oliver Hilsenrath, who is a citizen of Israel, to consider joining him as a client of Equity Trust and engaging it to manage his personal and family assets and financial affairs.  Dahan indicated that it is common for citizens with multi-national business affairs to use such trusts, and offered personally to assist the Hilsenraths in managing at least a portion of their business affairs.  Dahan introduced Oliver Hilsenrath to Melvyn Kalman ("Kalman") and John Perkins ("Perkins"), senior trust officers of a trust company then known as Matheson Trust Company (Jersey) Limited, located in the Channel Island of Jersey, off the coasts of England and France.

11.    The Hilsenraths are informed and believe, and on that basis allege, that when Matheson Trust Company (Jersey) Limited first contacted them, it was a part of the Jardine Matheson Group of Trust Companies, a group which held six principal operating companies located in the Jersey Islands, Bermuda, British Virgin Islands, Hong Kong, Labuan, Malaysia and Mauritius, all of which provided asset management through the use of trusts and corporate structures established in and administered from stable, neutral and low tax jurisdictions.  Since this first contact, Matheson Trust Company (Jersey) Limited was acquired by and/or began to do business as Insinger Trust Company Limited.  Insinger Trust Company Limited changed its name on July 20, 2001 to Insinger de Beaufort Trust Company Limited, which then, on July 18, 2003, changed its name to Equity Trust Company Limited.  Equity Trust Company Limited merged with Equity Trust (Jersey) Limited on November 19, 2003.  Throughout this corporate evolution, and until the termination of the employment of Kalman and Perkins, the Hilsenraths maintained contact with these trust companies through Kalman and/or Perkins, who remained trust officers of the successive companies.  As set forth above, Equity Trust has succeeded to all of the assets, liabilities and activities of the trust companies with which the Hilsenraths entered into various trust relationships.  The Hilsenraths in this pleading reference Matheson Trust Company (Jersey) Limited, Insinger Trust Company Limited, Insinger de Beaufort Trust Company Limited, Equity Trust

Page 8

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    Company Limited, and Equity Trust (Jersey) Limited collectively as "Equity Trust."

2              12.    In May of 1996, having been referred to the Hilsenraths by Dahan,

3    Perkins, on behalf of Equity Trust, placed a telephone call to Oliver Hilsenrath at his home in

4    Alamo, California, to solicit him and his family to do business with Equity Trust.  Two days

5    after this call, Perkins, on the letterhead of Equity Trust, further solicited the Hilsenraths'

6    business by mailing to Oliver Hilsenrath at his home in Alamo, California, a brochure

7    describing the services that Equity Trust could provide to the Hilsenraths.  Among the

8    services he proposed that Equity Trust provide the Hilsenraths was to incorporate and manage

9    companies pursuant to a trust relationship to be created between the Hilsenraths and Equity

10   Trust.

11             13.    On May 22, 1996, expecting that the company would hold, administer,

12   protect and ultimately augment their family's assets, Oliver and Hana Hilsenrath entered into

13   the first of more than one written Company Management Agreements with Equity Trust.

14   The trust company agreed to create and administer a "shelf company" for the benefit of the

15   Hilsenraths.  In entering into this agreement, and in each agreement into which it entered with

16   the Hilsenraths, Equity Trust assumed a relationship of trust with the Hilsenraths, and in

17   connection with that relationship owed the Hilsenraths a fiduciary duty.  Moreover, pursuant

18   to the terms of the agreement, Equity Trust agreed it would be liable to the Hilsenraths for

19   fraud, willful misconduct, and/or gross negligence, and for breach of trust should any such

20   fraud, willful misconduct and/or gross negligence occur.

21             14.    In addition to having the Hilsenraths execute the May 22, 1996

22   Company Management Agreement, Equity Trust required them to complete a Client

23   Acceptance Form, which both sides then executed, and which, together with the Company

24   Management Agreement, reflects the written agreement between Equity Trust and the

25   Hilsenraths.  In the Client Acceptance Form, Equity Trust agreed that all information

26   provided to it would remain confidential.

27             15.    In accordance with their written agreements with the Hilsenraths,

28

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  Equity Trust retained control over the "shelf companies" created for the Hilsenraths, having

2  sole responsibility for the appointment of directors of the companies and for the creation of

3  banking relationships, and complete authority to make all major decisions regarding the

4  companies' activities, including the administration of the companies' financial affairs.

5        16.   In accordance with their agreements with the Hilsenraths, Equity Trust

6  created, administered and controlled for the Hilsenraths the following companies:  Aida

7  Holdings, Ltd., later renamed Borazon Holdings; Telecom Associates; Star Anise; and Oliver

8  Hilsenrath Family Investment Ltd.

9        17.   In 1996, in conjunction with their entering into the first Company

10  Management Agreement with Equity Trust, the Hilsenraths executed a power of attorney

11  giving Dahan the authority to execute trades and administer investments for Aida Holdings,

12  Ltd.; the Hilsenraths are further informed and believe that Dahan did so at various times after

13  May of 1996.  This power of attorney expired in 1997.

14        18.   Hana and Oliver Hilsenrath, in entering into these relationships with

15  Equity Trust, expected the trust company to provide stable investment mechanisms by which

16  the financial affairs of their family would be administered by people they understood to be

17  expert in international business affairs.  They understood Equity Trust would protect their

18  family assets, make wise decisions about how to invest them, and at all times act prudently,

19  putting the financial security of Hana and Oliver Hilsenrath and their children first.  The

20  Hilsenraths understood themselves to be creating mechanisms by which their assets could be

21  distributed to their children, in an orderly fashion, should they die or become incapacitated.

22  Finally, in creating these relationships they wanted to build a relationship with Dahan and

23  other major investors in U.S. Wireless, who they believed were key to the company's

24  ultimate financial success and who pledged long term support of the newly founded company.

25        19.   In July of 1996, at the time of or shortly after the "reverse merger,"

26  Equity Trust and Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, entered

27  into agreements with U.S. Wireless by which the companies would provide market and

28

Page 10

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

industry advisory and support services to U.S. Wireless.  In connection with this agreement,
and for the benefit of Dahan and Haruvi, who were acting through Equity Trust, Crossgar
Limited and Ryburn Limited, were granted a three-year option to purchase 1.2 million shares
of the company, Janvrin Holdings Limited received shares of stock in the company, and all
three companies were to be paid various fees by U.S. Wireless.

20.    Over the next two years, in accordance with the terms of this agreement
with U.S. Wireless, Dahan and Haruvi, acting through Equity Trust, Crossgar Limited and
Janvrin Holdings Limited, earned various fees/commissions for introducing other investors to
the company, and for facilitating the buyout of "seed" investors by a new set of shareholders.

21.    In 1999, Dahan and Haruvi, through Equity Trust and Janvrin Holdings
Limited, Crossgar Limited, and Ryburn Limited, mounted a proxy fight by which they sought
to oppose critical new financing for U.S. Wireless.  Oliver Hilsenrath had the support of a
majority of the company's shareholders and defeated the proxy fight.

22.    On March 2, 2000, after the proxy fight, the Board of Directors of U.S.
Wireless determined that the option to purchase 1.2 million shares, granted in 1996, had
expired and further determined that Dahan and Haruvi, through Equity Trust, Janvrin
Holdings Limited, Crossgar Limited and Ryburn Limited had breached their prior agreement
with U.S. Wireless to provide market and industry advisory and support services.  The board
authorized the company to commence litigation.  In conjunction with this decision, U.S.
Wireless held up payments otherwise due to Dahan and Haruvi, through Equity Trust, Janvrin
Holdings Limited, Crossgar Limited and Ryburn Limited; U.S. Wireless elected to escrow the
funds rather than pay them, and refused to remove restrictive legends on shares of stock
owned by Janvrin Holdings Limited, thereby blocking sale of the stock.

23.    U.S. Wireless filed an action against Janvrin Holdings Limited,
Crossgar Limited and Ryburn Limited on May 22, 2000 in the Superior Court of California
for the County of Contra Costa. This action was never served, and was dismissed without
prejudice on October 26, 2000, after U.S. Wireless had filed counter-claims in the Federal

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    Actions referenced below.

2        24.    When he realized that U.S Wireless was withholding payments to

3    Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, and would not release

4    share restrictions to allow a stock sale, Dahan decided to try to gain an advantage in the

5    dispute. Aware of the Hilsenraths' relationship to Equity Trust, Dahan decided to use his

6    own relationship to Equity Trust as a lever to gain access to the Hilsenraths' confidential

7    financial information. As reflected by the documents in collective Exhibit A, on May 25,

8    May 26, June 1, June 5, June 6, and June 13, 2000, Dahan contacted various persons at

9    Equity Trust, including Linda de la Coeur, Celine Gimenez, and Melvyn Kalman, demanding

10    that Equity Trust transmit to him confidential written information from the Hilsenrath files

11    maintained by Equity Trust.

12        25.    During this time period, as reflected by Exhibit B, on May 26, 2000,

13    Oliver Hilsenrath affirmed in writing earlier directions he had given to Equity Trust, that it

14    was not authorized to release any information to anyone about the Hilsenraths' financial

15    situation.

16        26.    Concerned about this conflict between two of its fiduciaries, as reflected

17    by Exhibit C, on June 5, 2000, David Chalmers-Hunt of Equity Trust contacted counsel,

18    Steve Meiklejohn of Ogiers & Le Masurier in Janvrin Holdings Limited, Crossgar Limited,

19    and Ryburn Limited Equity Jersey, who advised him that he should not disclose any

20    information in the Hilsenraths' files.

21        27.    On June 17, 2000, Equity Trust retained an attorney, Steven J. Glusband

22    of Carter, Ledyard & Milburn in New York City to represent Janvrin Holdings Limited,

23    Crossgar Limited and Ryburn Limited in dealings with U.S. Wireless. Without further

24    authority from Equity Trust, Mr. Glusband's colleague, William Sloane, retained Westreich

25    and Lillick & Charles to associate with his firm and to prosecute claims for Janvrin Holdings

26    Limited, Crossgar Limited and Ryburn Limited on behalf of Equity Trust. Apparently

27    unaware of the U.S. Wireless action pending in Contra Costa County, on June 30, 2000, Mr.

28

Page 12

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  Sloan and Mr. Westreich, acting for their firms and for Equity Trust, filed three separate

2  lawsuits in this court: *Janvrin Holdings Ltd. v. U.S. Wireless,* action # 00-CV-02334-CW;

3  *Crossgar Ltd. v. U.S. Wireless,* action # 00-CV-02335-CW; and *Ryburn Ltd. v. U.S. Wireless,*

4  action # 00-CV002346-CW.  These actions are identified in paragraph 22 of the Second

5  Amended Complaint in this action and will be referenced in this counter-claim/third party

6  complaint as they are in that paragraph, i.e., as the "Federal Actions."

7          28.    On July 3, 2000, Beth Applebaum, Westreich's colleague, faxed Equity

8  Trust copies of the three complaints that had been filed.  As reflected by Exhibit D, on July

9  12, 2000, in reply, Kalman and Perkins sent Mr. Glusband a letter, expressing dismay that

10  lawsuits had been filed without their authority.  They reminded Mr. Glusband that they,

11  Kalman and Perkins, were directors of the three companies and that they had previously told

12  him in a telephone call that they alone could act for the companies.  They instructed Mr.

13  Glusband to contact Ms. Applebaum and inform her that the filing of Federal Actions had

14  been unauthorized.  They closed by indicating that they authorized no further actions until

15  they knew what fees were likely to be incurred in the litigation.

16          29.    Continuing to be concerned about the conflict between their fiduciaries,

17  i.e., Dahan and the Hilsenraths, Kalman and Perkins again sought legal advice from Ogiers &

18  Le Masurier. As reflected by Exhibit E, on July 28, 2000, in a memo to their file, they

19  memorialized both the legal advice they had received – that there was a conflict – and their

20  decided course of action – to withdraw from representation of the Hilsenraths' interests.  At

21  that time, they thought, they would be "transferring out" the Hilsenrath files.  These files

22  were never "transferred out."

23          30.    On August 25, 2000, describing the conflict situation, Kalman sent

24  Dahan the following fax memo, a copy of which is attached as Exhibit F:

25          Dear David [Dahan]:

26
27          I have been very concerned that the legal dispute between Janvrin, Ryburn and
        Crosgar [sic] with Oliver and David K. [David Klarman, General Counsel of
28          U.S. Wireless] may have created a **conflict of interest in this office**.

                                                         Page 13

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

I have taken legal advice from Tim Le Coq of Ogiers and he has confirmed that if this case goes to court we could be embarrassed. There is nothing illegal about providing management and advisory services to two parties involved in a dispute. However, I am advised that Courts everywhere do not approve of such a situation, as **it is almost impossible to maintain a clear distinction between the two parties.**

**Having given the matter much thought I have decided to be totally on your side and to have nothing to do with Oliver or David** (Emphases added)

31.    The Hilsenraths are informed and believe, and on that basis allege, that sometime between July 12, 2000 and August 25, 2000, Equity Trust ratified the acts of Mr. Sloane and Westreich in commencing the Federal Actions, retained them as counsel for Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, and authorized the prosecution of the cases.

32.    The Hilsenraths are informed and believe, and on that basis allege, that after July 12, 2000 Equity Trust, through Kalman, Perkins, and/or other employees, had conversations with Dahan and others, including Westreich, in which they revealed confidential information regarding the Hilsenraths' assets and past trust transactions.

33.    To the best of the Hilsenraths' knowledge, neither Equity Trust nor they themselves engaged in any illegal conduct in the creation and operation of the Equity Trust "shelf companies." In the companies the Hilsenraths held assets that included in excess of 5 million shares and options of U.S. Wireless obtained legitimately and for consideration either at the time of the "reverse merger" or through Mr. Hilsenrath's employment as an executive of the company.   Mr. Hilsenrath also received his regular monthly salary payments from U.S. Wireless in the companies. In seeking to obtain the Hilsenraths' confidential information, and in actually obtaining it, Dahan, Haruvi, Kalman, Perkins, Equity Trust, and Westreich were seeking to have and use confidential information as to the actual financial condition of the Hilsenraths, and to manufacture evidence of impropriety that in fact the Hilsenraths had and maintained an "off shore" trust.  They sought this information not because they themselves believed there was any impropriety in the maintenance of the "off shore"

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   relationships, but rather because they believed they could embarrass Oliver Hilsenrath and

2   members of the US Wireless Board, and put pressure on them, simply because the

3   relationships existed.

4           34.     The Hilsenraths did not violate any laws, including securities and tax

5   laws, in their relationship with Equity Trust and in their conduct of their business affairs.

6   Moreover, as to the business affairs Equity Trust conducted on their behalf, the Hilsenraths

7   relied on Equity Trust and other domestic advisors to counsel them on their legal obligations.

8   They never hid from Equity Trust or any of these advisors any of the facts related to Equity

9   Trust or its activities, nor did they dispute Equity's decisions on management, appointment of

10  directors, secretaries or representations to authorities.

11          35.     Beginning on August 25, 2000, at the latest, when Equity Trust decided

12  to be "totally" on Dahan's side, Equity Trust and Dahan accelerated their efforts to obtain and

13  use confidential Hilsenrath information to gain an advantage in the dispute between U.S.

14  Wireless and Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited.  To try to put

15  pressure on the Board of Directors of U.S. Wireless, they approached one of the company's

16  directors, David Tamir.  They made various statements about the Hilsenraths' relationship to

17  Equity Trust, and disclosed to Mr. Tamir confidential information about the Hilsenraths'

18  business dealings with Equity Trust.  The approach backfired; rather than approach the Board

19  of Directors or Mr. Hilsenrath, Tamir resigned from the board and sold his shares in U.S.

20  Wireless, which had also been held by Equity trust through a "shelf" company.

21          36.     Having had no success in the approach to Tamir, Equity Trust and

22  Dahan arranged for a conference call with certain members of the Board of Directors of U.S.

23  Wireless including Irvin Gross.  Again they made various statements about the Hilsenraths'

24  relationship to Equity Trust, and disclosed confidential Equity Trust information.  Gross

25  reacted much like Tamir, except that he was the holder of a very large block of restricted

26  shares of stock in U.S. Wireless.  To effect a sale of his stock, Gross pledged the stock as

27  security for a loan with Merrill Lynch, upon which he defaulted.  Merrill Lynch reacted by

28

Page 15

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1  selling all of the Gross shares on the open market, causing the share price of U.S. Wireless to

2  plunge, in just ten days, from approximately $15.00 per share to approximately $4.00 per

3  share.

4      37.    Equity Trust was the moving party behind these efforts. Since the

5  company had decided to be "totally on Dahan's side," Kalman, on November 6, 2000,

6  (Exhibit G) instructed Linda de la Cour, a Senior Administrator of Equity Trust, to forward

7  confidential Hilsenrath documents to an attorney for Dahan in Israel, Amos Bentzur. In a

8  masquerade to hide his activities, Kalman instructed Ms. de la Cour to inform Bentzur that

9  she was sending the documents pursuant to the terms of the power of attorney Mr. Dahan had

10  had. However, as Kalman and Equity Trust knew well (and as Mr. Hilsenrath had confirmed

11  in May, 2000), that power of attorney had expired in 1997 (three years before), and had

12  applied to trades in only one of Equity Trust's "shelf companies," Aida Holdings Limited.

13  Ms. de la Cour sent Mr. Bentzur the trading records for Borazon, Telecom Associates, Stare

14  Anise and the Oliver Hilsenrath Family Investments companies. Immediately upon his

15  receipt of this information on November 6, 2000, Mr. Bentzur forwarded the confidential

16  Hilsenrath information he received to Dahan and to Westreich.

17      38.    The effort continued. Various interested parties arranged to meet in

18  London in early December 2000 at the Euston Park Plaza Hotel. On November 30,

19  Westreich and Ms. Applebaum traveled to London on a Virgin Atlantic flight. Mr. Glusband,

20  Kalman, Perkins, Dahan, Haruvi, Mr. Bentzur and others arrived by the next day. The parties

21  conferred on December 1, 2, 3 and 4, and met on at least one of those days. Kalman and

22  Perkins were present as representatives of Equity Trust and as directors of Janvrin Holdings

23  Limited, Crossgar Limited and Ryburn Limited; Dahan and Haruvi were present as

24  beneficiaries the companies and clients of Equity Trust; Westreich, Mr. Glusband, and Ms.

25  Applebaum were present as counsel to Equity Trust, Janvrin Holdings Limited, Crossgar

26  Limited and Ryburn Limited; Mr. Bentzur was present as counsel to Dahan.

27      39.    At the time of these conferences and meeting(s), Equity Trust, Kalman

28

Page 16

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    and Perkins continued as fiduciaries to the Hilsenraths, and continued to be obligated to the

2    Hilsenraths to preserve their interests and confidences, both at law and pursuant to the terms

3    of Equity Trust's agreements with the Hilsenraths.  Equity Trust continued to have a conflict

4    of interests.

5          40.    Kalman and Perkins brought Equity Trust's confidential Hilsenrath files

6    to the London meeting(s).  They delivered these files to Westreich and Applebaum.  The

7    parties reviewed the materials and discussed how best to use them.  They discussed using the

8    files to try to put pressure on Mr. Hilsenrath and U.S. Wireless, hoping that U.S. Wireless

9    would settle the Federal Actions rather than risk disclosure that its CEO held shares of stock

10   in a foreign trust.  Mr. Bentzur cautioned the group against this plan, expressing a concern

11   that the parties themselves might destroy the value of their own holdings.  The rest of the

12   group ignored this advice and ultimately decided that, among other things, Westreich would

13   approach counsel for U.S. Wireless and make veiled threats that he and his clients had

14   evidence of irregularities by Mr. Hilsenrath that would jeopardize the continued existence of

15   the company.  Westreich told everyone that there was to be a Case Management Conference a

16   week later.  He said that at the conference he could approach counsel for U.S Wireless and

17   tell him he had some embarrassing material involving the Hilsenraths, and that counsel and

18   the company might want to settle to avoid its becoming public.  Everyone, save Mr. Bentzur,

19   endorsed this plan.

20         41.    On December 5, 2000, Westreich and Ms. Applebaum left London,

21   returning to San Francisco with the confidential Hilsenrath files.  As reflected by Exhibit H,

22   three days later, on December 8, 2000, Linda de la Coeur of Equity Trust, on behalf of

23   Kalman, faxed further confidential documents to Westreich.  In sending the materials, making

24   reference to the plan the parties had developed in London, Ms. de la Coeur stated:

25         Dear Glenn:

26

27         Litigation Crossgar Limited/Ryburn Limited/Janvrin Holdings Limited

28         Following a search through further files, Melvyn has asked me to forward the

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

enclosed correspondence that he thinks may be of benefit for your meeting Friday. I would appreciate if you would acknowledge receipt of these papers as they are relevant to the litigation.

Meanwhile, Melvyn looks forward to hearing about a successful meeting.

On December 14, 2000, Ms. Appelbaum sent this same confidential information to Mr. Bentzur, Dahan and Haruvi.

42.     In the week before the Case Management Conference on December 15, 2000, Westreich and Ms. Applebaum reviewed the confidential documents they had received, and conferred with Kalman, Dahan, Haruvi, and Mr. Glusband about their plans to use it to blackmail a settlement out of U.S. Wireless.

43.     The Case Management Conference was held on December 15, 2000, before Judge Claudia Wilken of this court. After the conference, Westreich began to implement the parties' blackmail plan. When he returned to his office, he conferred with Ms. Applebaum about his efforts, and placed a call to Dahan and Haruvi.

44.     On December 19, 2000, Westreich and Applebaum had a conference call with their clients that lasted over an hour and a half. Among the subjects discussed was Westreich's approach to U.S. Wireless's attorney and the threats he had made. Indeed, as reflected by Exhibit I, in setting the agenda for this conference call, Alon Rosenberg, a colleague of Mr. Bentzur in Israel, and an attorney in the Bentzur law firm, e-mailed Westreich as follows:

Dear Glenn,
Good Morning

I have talked with Amos [Bentzur] about the scheduled conference call and we could do it either today (Tuesday) 11:00 (your time) or at 14:00 Wednesday (your time)

\*          \*          \*          \*          \*          \*

3. Arbitration – did you mention to Oliver's Counsel any of the "problematic Material" we might be holding before or during the Case Management Statement? [sic] If so, was there any reaction? (David [Dahan] would appreciate a full account of this procedure.)

Page 18

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

45.     The Hilsenraths are informed and believe, and on that basis allege, that as counsel for Equity Trust, and its companies Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, and in furtherance of the agreement he had reached with these entities, to use confidential Hilsenrath information to blackmail a settlement out of U.S. Wireless, Westreich disclosed confidential Hilsenrath information he had received from Equity Trust to the associate general counsel of the company, and to various others including directors of the company and their attorneys.

46.     Contrary to the allegations they have made in the Second Amended Complaint on file in this action, Westreich and Equity Trust, acting through the plaintiffs in this action, Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited, were themselves the source of the confidential information that led to the failure of U.S. Wireless.

C.     **Claims for Relief**

### FIRST CLAIM FOR RELIEF
**(Declaratory Relief, stated by Oliver Hilsenrath, against Counter-defendants/Third Party Defendants Equity Trust, Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited)**

47.     Oliver Hilsenrath incorporates into this claim for relief all of the allegations of paragraphs 1-46 of this amended counterclaim/third party complaint.

48.     There is a controversy between Plaintiffs/Equity Trust and Oliver Hilsenrath regarding the actual terms and conditions of the agreement giving rise to this dispute. In Paragraphs 41-48 inclusive of the Second Amended Complaint, plaintiffs/Equity Trust, through their counsel Westreich and Nixon Peabody LLP, set forth the terms and conditions of an alleged settlement agreement into which they allege they entered with U.S. Wireless. In fact, these allegations do not reflect the actual or the complete terms of the 2001 settlement agreement between plaintiffs/Equity Trust and U.S. Wireless

49.     Dahan himself set forth the actual terms of the settlement with U.S. Wireless in a June 30, 2005 letter to Grant Brown at Equity Trust:

Page 19

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   In order to eliminate any doubt I [Dahan] hereby remind you [Equity Trust] of the
    general terms of the settlement of the aforementioned litigation. Insinger Trust of
2   then, released US Wireless et al of any claims against the reception by Insinger
3   Trust of:

4   i.      2,500,000 shares of USWC with certain registration rights

5   ii.     USD 4,500,000 in the form of USD 1,500,000 to be paid from the US
            Wireless account to Janvrin and USD 3,000,000 to be paid to
6           Dyke/Rockvale from a settlement escrow established by US Wireless
7           management, as well as a conditional personal guarantee of 750,000
            options of USWC stock by the CEO of the company
8
9   iii.    The funds were all paid except USD 660,000 by USWC to Janvrin

10      50.     Thus, contrary to the allegations set forth in the Second Amended

11  complaint on file in this action, there were additional terms to the settlement, not reflected in

12  the document to which that pleading makes reference, including U.S. Wireless's release of

13  escrowed funds in the amount of $3,000,000, to be paid to Equity Trust companies Dyke and

14  Rockvale, and a personal guarantee of U.S. Wireless's performance, given by Oliver

15  Hilsenrath and secured by 750,000 options he had to purchase U.S. Wireless stock.

16      51.     Both Plaintiffs/Equity Trust and Westreich are aware that the

17  allegations of the Second Amended Complaint are inaccurate. Thus, for example, on June 13,

18  2001, soon after the settlement agreement had become effective, Equity Trust instructed The

19  Royal Bank of Scotland, at which it maintained an account for Dyke Limited, a Dahan "shelf

20  company" to wire $100,000 in funds from its account #1028-50181249 to the Lillick &

21  Charles General Account #200001 766 at Citibank in San Francisco.

22      52.     Oliver Hilsenrath is entitled to this court's declaration: that the actual

23  terms of the settlement agreement alleged in the Second Amended Complaint to exist are *not*

24  as the Plaintiffs/Equity Trust and Westreich have represented to this court, but include the

25  terms and conditions set forth in Paragraph 49 above; that the only element of the settlement

26  not performed was a payment of $660,000 due from U.S. Wireless to Plaintiff Janvrin

27  Holdings, and that Oliver Hilsenrath himself performed all conditions of the settlement on his

28

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    part to be performed.

2         WHEREFORE Oliver Hilsenrath prays relief as set forth below.

3

4    ### SECOND CLAIM FOR RELIEF
     **(Breach of Written Contract, against Third Party Defendant Equity Trust)**

5         53.    The Hilsenraths incorporate into this claim for relief all of the

6    allegations of paragraphs 1-46 of this amended counterclaim/third party complaint.

7         54.    In delivering confidential Hilsenrath information to Dahan, Haruvi,

8    Westreich, Applebaum, Lillick & Charles, Nixon Peabody LLP, and Bentzur, Equity Trust

9    breached its trust obligations and its written agreements with the Hilsenraths to protect their

10   assets and preserve the Hilsenraths' confidences.

11        55.    As a legal result of Equity Trust's breach of trust and of written

12   agreements, the Hilsenraths have been damaged in an amount equal to the value of their U.S.

13   Wireless stock and options, at the time of the breach, i.e., $518,000,000 plus other damages to

14   be proved at trial.

15        WHEREFORE the Hilsenraths pray relief as set forth below.

16

17   ### THIRD CLAIM FOR RELIEF
     **(Breach of Fiduciary Duty, against all Counter-Defendants/Third Party Defendants)**

18        56.    The Hilsenraths incorporate into this claim for relief all of the

19   allegations of paragraphs 1-55 of this amended counterclaim/third party complaint.

20        57.    In delivering confidential Hilsenrath information to Dahan, Haruvi,

21   Westreich, Applebaum, Lillick & Charles, Nixon Peabody LLP, and Bentzur, Equity Trust

22   breached its fiduciary duties to the Hilsenraths.

23        58.    Westreich, Nixon Peabody LLP (as successor to Lillick & Charles),

24   Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited conspired with Equity Trust

25   to breach the fiduciary duties Equity Trust owed the Hilsenraths.

26        59.    As a legal result of Equity Trust's breach of fiduciary duties, and all

27   parties' conspiracy to breach the duties, the Hilsenraths have been damaged in an amount

28

First Amended: Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    equal to the value of their U.S. Wireless stock and options, at the time of the breach, i.e.,

2    $518,000,000, plus other damages to be proved at trial.

3          WHEREFORE the Hilsenraths pray relief as set forth below.

4                                  **FOURTH CLAIM FOR RELIEF**

5    **(Invasion of Privacy, against all Counter-Defendants/Third Party Defendants)**

6          60.    The Hilsenraths incorporate into this claim for relief all of the

7    allegations of paragraphs 1-59 of this amended counterclaim/third party complaint.

8          61.    The Hilsenraths had an expectation that Equity Trust would keep their

9    confidential financial and personal information private.

10          62.    In obtaining and using the Hilsenraths' confidential financial and

11    personal information, to their own business ends, Counter-Defendants/Third Party

12    Defendants invaded the Hilsenraths' privacy.

13          63.    As a legal result of Equity Trust's invasion of privacy, the Hilsenraths

14    have been damaged in an amount equal to the value of their U.S. Wireless stock and options,

15    at the time of the breach, i.e., $518,000,000 plus other damages to be proved at trial.

16          64.    Hana Hilsenrath is a mother of six children, 4 of whom are minors, and

17    does not work outside the home.  As a legal result of the invasion of privacy by Counter-

18    Defendants/Third Party Defendants, she has suffered fear, anguish, and illness; has been

19    exposed to personal threats by shareholders of U.S. Wireless; and has suffered constant fear

20    of bodily injury to and/or attack upon her children as the result of deliberate and explicit

21    threats.  She has also seen the structure and security of her family threatened by the disclosure

22    of her family's private information, and has lost the vast majority of her personal wealth. She

23    has suffered general damages in an amount to be proved at trial.

24          65.    The Hilsenraths discovered the invasion of privacy by Counter-

25    Defendants/Third Party Defendants within one year prior to filing their Answer/Counterclaim

26    in this action.

27          66.    The Hilsenraths are entitled to exemplary damages from Counter-

28    Defendants/Third Party Defendants, and each of them, on account of their fraudulent,

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    oppressive and malicious conduct, in amounts that the Hilsenraths will prove at trial.

2        WHEREFORE, the Hilsenraths pray relief as set forth below.

3

4    ### FIFTH CLAIM FOR RELIEF
     ### (RICO, against all Counter-Defendants/Third Party Defendants)

5        67.    The Hilsenraths incorporate into this claim for relief all of the

6    allegations of paragraphs 1-66 of this amended counterclaim/third party complaint.

7        68.    In their breach of trust, breach of fiduciary duties, invasion of privacy

8    and attempts to extort a settlement through the use of confidential activities; in its transfer of

9    confidential and protected information, indirectly and directly, through the use of telephone

10   lines; in their interference with the lawful business of U.S. Wireless, a registered and publicly

11   traded company in the U.S.; in their use and transfer of funds derived through extortion and

12   unlawful activity; and in their approach to U.S. Wireless directors and its other activities

13   related to the registered sale of U.S. Wireless securities; Equity Trust, Westreich and Lillick

14   & Charles/Nixon Peabody engaged in racketeering activities as that term is defined in the

15   U.S. Racketeering Influenced and Corrupt Organizations Act. Further, in their meetings,

16   conversations and use of Equity Trust's alter egos Janvrin Holdings Limited, Crossgar

17   Limited, and Ryburn Limited Equity, Equity Trust, Westreich and Lillick & Charles/Nixon

18   Peabody engaged in a pattern of racketeering activities and a created and conducted a

19   racketeering enterprise.

20       69.    Equity Trust and its alter egos, Janvrin Holdings Limited, Crossgar

21   Limited, and Ryburn Limited, Dahan, Haruvi, Westreich, Lillick & Charles and Nixon

22   Peabody have conspired with each other in engaging in these racketeering activities and in the

23   operation of the racketeering enterprise.

24       70.    As a legal result of these violations by Equity Trust, Janvrin Holdings

25   Limited, Crossgar Limited, and Ryburn Limited, Westreich, Lillick & Charles and Nixon

26   Peabody, the Hilsenraths are entitled to damages as set forth in paragraphs 55, 59, and 63

27   above, i.e., to $518,000,000, and to have those damages trebled, plus their attorneys fees in

28

Page 23

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1    the defense of the claims against them and the prosecution of this amended counterclaim/third

2    party complaint.

3         WHEREFORE, the Hilsenraths seek damages as follows:

4    **V.    PRAYER**

5         A.    By way of his answer, including affirmative defenses, Oliver Hilsenrath

6    prays that plaintiffs take nothing and have no relief by way of their Second Amended

7    Complaint.

8         B.    By way of their amended counterclaim/third party complaint, Hana and

9    Oliver Hilsenrath pray relief as follows:

10         1.    That this court declare, by way of Oliver Hilsenrath's cause of action

11    for Declaratory Relief, that:  there were certain additional terms to the Settlement Agreement

12    between plaintiffs and U.S. Wireless, as alleged in Paragraphs 41-48 of the Second Amended

13    Complaint, which were not included in the writings to which these Paragraphs make

14    reference; that among these terms was an agreement that U.S. Wireless would release

15    escrowed funds in the amount of $3,000,000, to be paid to Equity Trust companies Dyke and

16    Rockvale, and that Oliver Hilsenrath would secure a personal guarantee of U.S. Wireless's

17    performance, with 750,000 options he had to purchase U.S. Wireless stock;  and that U.S.

18    Wireless/Oliver Hilsenrath performed each of these additional terms of the Agreement, save a

19    payment of $660,000 due from U.S. Wireless to Equity Trust/Janvrin Holdings Limited.

20         2.    That Hana and Oliver Hilsenrath recover as damages from Equity Trust

21    the sum of $518,000,000, plus other damages proved at trial, as a result of Equity Trust's

22    breach of trust and written agreements between it and the Hilsenraths.

23         3.    That Hana and Oliver Hilsenrath recover, from Counter-

24    Defendants/Third Party Defendants, and each of them, the sum of $518,000,000, plus other

25    damages proved at trial, on account of these parties' breach of fiduciary duty/conspiracy to

26    breach fiduciary duty, and invasion of privacy.

27         4.    That, according to proof, Hana Hilsenrath recover general damages, as a

28

Page 24

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

1   result of Counter-Defendants'/Third Party Defendants' invasion of privacy.

2          5.      That on account of Counter-Defendants/Third Party Defendants'

3   violation of the RICO act, Oliver and Hana Hilsenrath recover from them and each of them,

4   the sum of $518,000,000, plus other damages proved at trial, and to have those damages

5   trebled, plus their attorneys fees in the defense of the claims against them and the prosecution

6   of this amended counterclaim/third party complaint.

7          5.      That the Hilsenraths recover prejudgment interests on the sums awarded

8   them as damages.

9          6.      That the Hilsenraths recover exemplary damages from Counter-

10  Defendants/Third Party Defendants, and each of them, on account of their fraudulent,

11  oppressive and malicious conduct, in amounts proved at trial.

12         C.      By way of this answer and amended counterclaim/third party complaint,

13  the Hilsenraths' pray relief as follows:

14         7.      That the Hilsenraths recover their costs of suit, including attorneys'

15  fees; and

16         8.      That this Court award such other and further relief as it deems proper.

17

18  Dated:  November 30, 2006              Respectfully submitted,

19                                         Chapman Popik & White LLP

20

21                                         By:

22                                             J. MICHAEL MATTHEWS
                                               Attorneys for Defendant
23                                             OLIVER HILSENRATH, and Counter-
                                               Claimants/Third Party Plaintiffs OLIVER
24                                             AND HANA HILSENRATH

25

26

27

28
                                                                              Page 25

First Amended:  Answer to Second Amended Complaint; Amended Counter-Claim/Third Party Complaint of Oliver
Hilsenrath and Hana Hilsenrath
Case No. C 02 1068 CW (BZ)

239797.1

**EXHIBIT  A**