**EXHIBIT I**

HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*

RECEIVED

JUN 1 8 2007

E-filing

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFOR

TEH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HANA HILSENRATH AND OLIVER
HILSENRATH,

        Plaintiffs,

        v.

NIXON PEABODY LLP, GLENN
WESTREICH, BETH MITCHELL, AND
DOES 1-10,

        Defendants.

Case No. C 07 3193

2 V

COMPLAINT FOR MALICIOUS
PROSECUTION, CIVIL CONSPIRACY
AND EXTORTION

[JURY TRIAL DEMAND]

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST·
      RICHARD W WIEKING
Clerk, U.S. District Court
Northern District of California

Deputy Clerk
Date 7-18-07

**INTRODUCTION**

1.   In May 2007, in *Case No: 4:02-cv-1068 Janvrin Holdings Limited
     et al v. Hilsenrath et al.* the Federal Court determined that
     Janvrin at al. invaded the Hilsenraths' privacy and proceeded
     to blackmail Hilsenrath and his company, while causing
     significant damage, financial and personal.

2.   Janvrin et al effected their scheme by conspiring with their
     American attorneys: Glenn WESTREICH, Beth MITCHELL-Appelbaum
     and others in the lawfirm of Nixon Peabody LLP.

3.    Defendants WESTREICH, MITCHELL and Nixon Peabody effected their role in the conspiracy by means of a bogus, malicious litigation against the Hilsenraths.

4.    *This malicious litigation in its various forms lasted 7 years, from June 2000 to March 2007. Nixon Peabody and its staffers used their legal practice and the federal legal system as means to unlawfully hurt the plaintiffs.*

5.    Nixon Peabody's legal practice was used as a camouflage for the implementation of a sophisticated extortion plan.

6.    *By this present complaint, plaintiffs Hana and Oliver Hilsenrath are now seeking a judgment against Janvrin's co-conspirators, the firm and the attorneys of Nixon Peabody LLP and others, pursuant to the separate and independent responsibility of each and every co-conspirator who took part at the conspiracy.*

## THE PARTIES

### Plaintiffs

7.    Plaintiffs Hana and Oliver Hilsenrath (referenced collectively as THE HILSENRATHS) are private individuals and professionals. The Hilsenrath family were the largest shareholders of US Wireless Corporation (USWC), a former publicly traded California based company. Oliver HILSENRATH was the founder, Chairman and CEO of US Wireless Corporation.

### Defendants

8.    Defendants Glenn WESTREICH (WESTREICH) and Beth MITCHELL, formerly Appelbaum, (MITCHELL) are individuals, attorneys and partners of the Nixon Peabody LLP lawfirm of San Francisco California.

9.  At all times referenced in this pleading, WESTREICH and MITCHELL were acting within the scope of their authority as partners/employees of Nixon Peabody LLP (NIXON).

10. Does 1-10 are other individuals related to Nixon Peabody LLP, WESTREICH, MITCHELL or Janvrin et al.

*Defendants' clients and co-conspirators*

11. Defendants' clients and co conspirators, Janvrin Holdings Limited, Crossgar Limited and Ryburn Limited (Janvrin at al) are three shell corporations set up, owned, financed, operated and closed down by Equity Trust (Jersey) Limited (EQUITY) a large financial institution based in Jersey/UK.

12. At all relevant time to this complaint Equity Trust were Janvrin et al's owners and shared with Janvrin et al all personnel, directors, secretaries, nominee shareholders, legal advisers, banking facilities, funding, communication facilities and office facilities.

13. Janvrin et al never had management, interests, officers, facilities, funds or facilities outside those of-and-by Equity Trust.

14. At all relevant time to this complaint Melvyn Kalman and John Perkins were executives of both Equity trust and Janvrin et al.

## JURISDICTION AND VENUE

15. The Federal Court has jurisdiction over this case and the venue in the Northern District of California is adequate pursuant to *28 U.S.C. §1331, §1332*.

16. Defendants' clients and co conspirators are foreign (non-US) corporations.

17.  This case is related to two other federal cases: *4:02-cv-01068-CW-BZ and 3:03-cr-00213-WHA*

## LIMITATIONS OF STATUTE

18.  This present complaint stems from defendants malicious prosecution in the case Janvrin et al v. Hilsenrath et. al. (4:02-cv-1068 CW,BZ). Plaintiffs were released from representation in the above case on March 12, 2007 — three months ago. No limitations of statute are therefore applicable to this complaint.

## THE FACTS

19.  In March 2000, three Jersey/UK based corporations: Janvrin, Rayburn and Crossgar hired defendants NIXON et al. to implement a scheme to improperly sell expired securities of US Wireless Corporation in the open market.

20.  WESTREICH, MITCHELL and NIXON proceeded to file litigation in federal court to provide the vehicle to coerce US Wireless and its management to give in to Janvrin and NIXON's pressure to trade the securities.

21.  In order to further their scheme, in and about November 2000, Janvrin et al. conspired[1] with NIXON at al and others to:

   a. unlawfully obtain, use and trade private financial records of the HILSENRATHS,

---

[1] *Unruh v. Truck Ins. Exch., 7 Cal. 3d 616,* *
To state a cause of action for conspiracy the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting. (*Mox Incorporated v. Woods, supra; Orloff v. Metropolitan Trust Co.* (1941) 17 Cal. 2d 484, 488 [110 P.2d 396]; see *Wise v. Southern Pacific Co.* (1963) 223 Cal. App. 2d 50, 64-65 [35 Cal. Rptr. 652]; Witkin, *op. cit. supra*, Pleading, § 774, p. 2390.)

"Malice is properly pleaded by alleging the wrongful motive, intent or purpose." (3 Witkin, *op. cit. supra*, Pleading, § 766, at p. 2383.) A general allegation of such intent is sufficient to support a claim for exemplary damages. (*3 Witkin, op. cit. supra, Pleading, § 769, p. 2385.*)

---

b. blackmail the HILSENRATHS and others in his company with making those records public,

c. impeach the company and hurt its publicly traded stock unless a favorable arrangement was made on behalf of Janvrin et al. and NIXON.

22. WESTREICH and MITCHELL personally and knowingly accessed confidential financial records of the HILSENRATHS. The retrieval of records occurred, but was not limited, to a week long effort in London, in which WESTREICH and MITCHELL selected, retrieved and photocopied HILSENRATH family records and brought them back to California to put them at use as decided with their co-conspirators.

23. One of the 9 participants at the broadly attended London documents harvesting meeting describes the events in a sworn affidavit (see Oliver Hilsenrath Declaration):

> "The abovementioned confidential Hilsenrath records were handed to the Nixon Peabody attorneys with the objective to impeach Hilsenrath with his holdings in offshore trusts and get the CEO Hilsenrath fired. Hilsenrath was identified as the primary hurdle in the Janvrin litigation."[2]

24. On several documented occasions between December 2000 and April 2001, defendants made specific threats to employees and advisors of US Wireless stating that they will disturb the

---

[2] *Wynn v. NBC, 234 F. Supp. 2d 1067.* The elements for a claim of tortious interference with contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.
  As an element of a tortious interference with contractual relations claim, plaintiffs must plead facts sufficient to support an inference that defendants intended to cause the alleged breach

1    company by use of the stolen records if their demands are not
2    met.

3    25. Under the pressure of the above threats, the Board of
4    Directors of USWC (1) settled the dispute with Janvrin et al
5    on the basis of $4.5 million in cash, 2.5 million shares of
     stock of USWC and 750,000 options of Mr. HILSENRATH's holdings
6    and (2) launched a secret investigation of the above
7    allegations of impropriety against USWC's CEO Oliver
8    HILSENRATH as alleged by the Nixon et al.

9    26. In May 2001 the USWC Board of Directors fired founder and CEO
10   Oliver HILSENRATH as the result of that investigation.

11   27. USWC did not survive the dismissal of its CEO, and went
12   bankrupt 6 weeks later, rendering useless the 2.5 million
     shares in the hands of Janvrin et al.

13   28. In March 2002, defendants NIXON initiated a new, bogus,
14   litigation against HILSENRATH, USWC, its management, attorneys
15   and accountants.

16   29. This time defendants NIXON claimed that they were surprised
     and financially hurt by the investigation against HILSENRATH
17   and the subsequent collapse of US Wireless.

18   30. This was a second, new phase of the ongoing malicious
19   prosecution given that it was NIXON themselves that instigated
20   the internal investigation in order to exercise pressure on
21   HILSENRATH.

22   31. In 2005, upon the discovery of tangible evidence of the
     invasion of privacy, of the organized trade and use of
23   HILSENRATH family financial documents, Hana and Oliver
24   HILSENRATH filed a counterclaim against Janvrin et al.

25   32. In 2007, the Court ordered representatives or trustees of
26   Janvrin et al, Nixon Peabody's clients to show up in Court, in
27   person, if they wish to continue to prosecute their seven year
     old case.

28

33. The "case" was but a sophisticated cover-up scheme planned and executed by Janvrin and NIXON. Once the cover was of no use and possibly even a risk, no one from the British trust, NIXON's clients, would bother risk a trip to the United States.

34. Therefore the plaintiffs in that litigation [4:02-cv-1068] simply stood the Court up --NO representative or trustee of Janvrin showed up.

35. The Court proceeded to dismiss Janvrin's complaint, and ordering Janvrin's default with respect to the HILSENRATH counterclaim.

36. At the same time, the HILSENRATH's applied for the Court to add NIXON et al to their counterclaim.

37. NIXON avoided to be added as counterdefendants stating primarily that this would prejudice their clients, Janvrin et al.

38. The Court accepted NIXON's argument and determined that the addition of NIXON as counterdefendants would prejudice Janvrin et al who would loose their legal representation.

39. Less than a week after avoiding to be added to the litigation as defendants, NIXON moved to be released from representing Janvrin and were indeed released.

40. At the same time WESTREICH also briefed the Court that his clients: Janvrin, Rayburn & Crossgar do not exist anymore for an unknown time.

41. Plaintiffs Hana and Oliver HILSENRATH therefore conclude that WESTREICH, MITCHELL and Nixon Peabody did not have, for considerable time, a client in their legal pursuit of Janvrin v. HILSENRATH, but were litigating and seeking financial benefits from the HILSENRATHS for themselves and their firm.

42. Further, Nixon Peabody, WESTREICH and MITCHELL are not conflicted with their former clients anymore. Therefore

1  attorney-client prejudice is not in the way of this current

2  complaint

43.  Between 2005 and 2006, in a broad US government investigation
3
it was determined that the documents used by NIXON at al and
4
Janvrin, Rayburn and Crossgar to impeach Mr. HILSENRATH, were
5
not related to improper financial transactions and, in fact,
6
the USWC CEO did not engage in defrauding USWC or its
7
shareholders.

44.  The HILSENRATH's, who had the vast majority of their assets
8
invested in USWC stock, lost the value of 6.5 million shares
9
of USWC worth over $26 million at the company's last day of
10
trade ever: May 29, 2001; Thus rendering the damage
11
irreparable.

45.  As further result of defendants' malicious prosecution, the
12
HILSENRATH's lost a severance package, lost several years of
13
wages and income and experienced severe adversity resulting
14
form defendants' defamation.
15

16
## CAUSES OF ACTION – GENERAL
17

18  MALICIOUS PROSECUTION, LITIGATION PRIVILEGE AND RULE 47(b)

19

46.  It is expected that the initial arguments of the defendants in
20
this case will be that (1) plaintiffs have the duty to comply
21
with the prefiling requirement of section 1714.10 and (2) that
22
defendants can invoking the litigation privilege – rule 47(b)
23
47.  None are successful defenses.
24
48.  Courts have established the exception to the prefiling rule in
25
cases of malicious prosecution:

26
     "It is well established that a wholly independent
27
     cause of action for malicious prosecution may be
     pled against an attorney without reference to a
28

separate cause of action for civil conspiracy or
any need to meet the procedural prefiling
requirements of section 1714.10".[3]

49.    And as to the litigation privilege:

"The litigation privilege [Cal. Civ. Code §
47(b)] does not apply to claims of malicious
prosecution. Malicious prosecution actions are
permitted because the policy of encouraging free
access to the courts is outweighed by the policy
of affording redress for individual wrongs when
the requirements of favorable termination, lack
of probable cause, and malice are satisfied. This
is perhaps the only exception to the absolute
nature of the litigation privilege".[4]

50.    It should be noted that the "veil" of protection of actions
and communications offered by Rule 47(b) was the very cover
sought by Janvrin and Nixon Peabody when they embarked on the
(failed) prosecution of their cases. The very use of Court
events and the background of the ongoing litigation as the
stage for the extortion and for the further "squeeze" of the
HILSENRATHS were with the litigation privilege in mind.

## EVIDENCE OF MALICIOUS PROSECUTION

51.    Next, Nixon Peabody, WESTREICH and MITCHELL will argue that
there is no strong showing of a malicious prosecution and the
allegation is merely used to circumvent the prefiling
requirement.

52.    Again,- Not so.

53.    California law is clearly identifying the test elements for
malicious prosecution:

---

[3] Westamco Investment Co. v. Lee (1999) 69 Cal.App.4th 481, 483, 485-488.

[4] Flores v. Emerich & Fike, 2006 U.S. Dist, Flores v. Emerich & Fike, 416 F. Supp. 2d 885

"The elements of a prima facie case of malicious prosecution are (1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice. Malicious prosecution actions are disfavored under California law. The tort of malicious prosecution has historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution action. This is an evidentiary burden, not a pleading requirement. The court must consider the pleadings and the evidence submitted by the parties; it cannot weigh the evidence but instead must simply determine whether the plaintiff's evidence would, if credited, be sufficient to meet its burden of proof"[5].

54.  The facts in this complaint show clearly:

    a. The litigation in which the malicious prosecution occurred has terminated favorably to the HILSENRATHS (4:02-cv-1068 CW, BZ)

    b. The lead argument of this malicious prosecution (4:02-cv-1068 CW, BZ – filed in 2002) was that NIXON were taken by surprise of the internal investigation that they themselves instigated.

    c. As to malice, it is enough to say that Nixon Peabody et al were prosecuting the HILSENRATHS for a trust set up especially for this litigation and named "THE REVENGE TRUST" and the attorneys proceeded to litigate the case even after their client abandoned the litigation. More so, plaintiffs in this current case, Hana and Oliver HILSENRATH, believe that the Court and a jury will be astonished at the degree of malice and lack of ethics in that prosecution. It would be a matter of public service

---

[5] *Flores v. Emerich & Fike, 2006 U.S. Dist, Flores v. Emerich & Fike, 416 F. Supp. 2d 885*

1    to unmask, punish and extricate such legal practices from
2    our system.
3
4                    **FIRST CAUSE OF ACTION**
5          (NIXON – co-conspirators in a scheme to blackmail)
6
7    Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into
     this cause of action each and every paragraph in this complaint.
8    55.  Defendants NIXON, WESTREICH and MITCHELL were full partners at
9         the joint scheme with Janvrin.
10   56.  Janvrin were nothing but paper companies. No one from their
11        British home ever arrived to California or talked with any US
          Wireless staffers. They relied on WESTREICH and colleagues to
12        actually work the conspiracy.
13   57.  Janvrin et al were also long dead and closed while the bogus
14        conspiracy was continuing to seek to squeeze money from the
15        HILSENRATHS – all fueled and driven by the NIXON co-
16        conspirators still hoping to meet their goals.
17   58.  In a May 16 recommendation for judgment, the Federal court
          recommended to award the Hilsenraths $15 million in damages
18        and prejudgment interest.
19   59.  Nixon et al have equal and separate responsibility towards
20        their victims; the Hilsenraths are therefore entitled to $15
21        million from defendants in damages and prejudgment interest.
22   WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth
     below.
23
24                   **SECOND CAUSE OF ACTION**
25        (Aiding and abetting[6] in a blackmail scheme as part of the
               prosecution of Janvrin v. Hilsenrath)
26

----

[6] *United States v. Barnett, 667 F.2d 835*  An aider and abettor is liable for any criminal act which in the
27   ordinary course of things was the natural or probable consequence of the crime that he advised or commanded,
28   although such consequence may not have been intended by him.

60.    Defendants aided and abetted a blackmail scheme that resulted
       in the abovementioned settlement agreement with US Wireless.
61.    Mr. HILSENRATH is entitled to this Court's declaration that
       defendant should compensate Mr. HILSENRATH in an amount equal
       to the extorted settlement, an amount of $7.5 million.
WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth
below.

## THIRD CAUSE OF ACTION

### (Constructive trust – re Second Cause of Actions)

Plaintiff Oliver HILSENRATH realleges and incorporates into this
cause of action each and every paragraph in this complaint.

---

It is not essential that the accessory know the modus operandi of the principal. It is also not necessary that the person accused of aiding and abetting know all the details of the crime or all the persons who were perpetrating the crime

---

*Chance World Trading E.C. v. Heritage Bank of Comm..., 2004 U.S. Dist.*   To properly state a claim for aiding and abetting the tortious breach of a duty, a plaintiff must plead that a defendant: (1) had knowledge that another's conduct constitutes a breach of a duty; and (2) substantially assisted or encouraged that breach

Liability under a civil conspiracy requires a co-conspirator have an independent duty to a plaintiff. Tort recovery for civil conspiracy is only allowed against a party who already owes the duty, under substantive tort law, that was violated.

Under California law, there are two major distinctions between aiding and abetting and civil conspiracy which explain why an independent duty requirement is not an element of aiding and abetting. First, conspirators are held jointly liable for the tort committed, whereas aiders and abettors are not held liable as joint tortfeasors for the underlying tort. In a civil conspiracy, because liability is premised on the commission of a single tort, it is logical that all conspirators must be legally capable of committing the wrong. Second, in aiding and abetting, the defendant's conduct must be a substantial factor in causing the harm, while conspiracy requires no proof that the conspirator did anything that actually caused the harm. Consequently, a claim for aiding and abetting does not require that the defendant owe an independent duty to the plaintiff.

Under California law, the second element of civil aiding and abetting of a tort, substantial assistance, requires *the plaintiff to allege that the actions of the aider/abettor proximately cause the harm on which the primary liability is predicated. In other words, the assistance must have been a substantial factor in causing the harm suffered*

To properly state a claim for aiding and abetting the tortious breach of a duty, a plaintiff must plead that a defendant: (1) had knowledge that another's conduct constitutes a breach of a duty; and (2) substantially *assisted or encouraged that breach.*

62.  Mr. HILSENRATH is entitled to this Court's order imposing a constructive trust on all funds and consideration due to him from defendants in connection with the abovementioned 2001 Settlement Agreement.

WHEREFORE, plaintiff Oliver HILSENRATH prays relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Invasion of privacy as part of the prosecution of Janvrin v. Hilsenrath)

Plaintiff Oliver HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

63.  Defendants conspired and invaded Mr. and Mrs. HILSENRATH's privacy[7], reviewed and copied their personal information, and put it to their personal use. The invasion of privacy should be classified as "intrusion of seclusion"[8].

64.  The theft of the private documents[9], their distortion and use to *slander per se*[10] and ultimate unlawful dissemination of the documents caused: (1) Mr. HILSENRATH's termination as CEO[11] –

---

[7] Intrusion into the seclusion of another: *Fisher v. Quality Hyundai, Inc., 2002 U.S. Dist.*

[8] That a plaintiff has received damages for his claim of unreasonable public disclosure of private facts does not preclude an award of damages for his claim of intrusion upon seclusion: *Doe v. High-Tech Inst., Inc., 972 P.2d 1060*

[9] The tort is completed with the obtaining of the information by improperly intrusive means: *Pearson v. Dodd, 133 U.S. App. D.C. 279*

[10] "Slander per se" categories include charges that the plaintiff has committed a serious crime … the statement "you stole the money" has been held to be slander per se. *Hruby v. Kalina, 424 N.W.2d 130 (Neb. 1988)* - *Gilbert Law Summaries/Torts: Slander per se-special damages not required IS12431*

[11] *Applied Equip. Corp. v. Litton Saudi Arabia, 7 Cal. 4th 503,* To recover in tort for intentional interference with the performance of a contract, a plaintiff must prove: (1) a valid contract between plaintiff and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

------------------------------

*Wynn v. NBC, 234 F. Supp. 2d 1067* The elements for a claim of tortious interference with contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. As an

loss of severance of $3.18 million, (2) indefinite stop of
trade of US Wireless stock – the HILSENRATHS' loss of value of
5.3 million shares of stock at $2.94/share at the last day of
trade[12] – value of $15.58 million, (3) US freeze action of $7.3
million assumed embezzled per defendant's fake allegations,
(4) legal fees to attorneys of total $1.6 million and (5)
*Personal time invested and self representation at*
*$275,000/annum*[13] *and a loadstar doubling the value of time*
*invested*[14] *and amounting to personal time, with loadstar of*
*$3.2 million for the time-frame 2001 to 2007.*

65.  Plaintiffs seek DAMAGES (before exemplary damages) of $30.76
     million.

WHEREFORE, defendant Oliver and Hana HILSENRATH pray relief as set
forth below.

## FIFTH CAUSE OF ACTION

### (Intrusion of seclusion as part of prosecution of Janvrin v. HILSENRATH – Exemplary Damages)

Plaintiff Oliver HILSENRATH realleges and incorporates into this
cause of action each and every paragraph in this complaint.

66.  Defendant further conspired to invade plaintiffs' privacy and
     use distorted financial records to unfairly remove Mr.
     HILSENRATH from his post as CEO.

67.  Defendants' actions resulted in plaintiffs' loss of good name
     and good reputation[15].

---

element of a tortious interference with contractual relations claim, plaintiffs must plead facts
sufficient to support an inference that defendants intended to cause the alleged breach

[12] May 29, 2001 – first business day after CEO fired – last day of trade ever in the stock of the company

[13] Last salary earned before termination from US Wireless

[14] Pursuant to *Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691*

[15] The key to proving a defamation action is showing injury to reputation: *Smith v. Mission Assocs., 225 F. Supp. 2d 1293*

)                                    )

68.  Plaintiffs seek relief including general, special and
     exemplary damages/punitive damages from *Intrusion of Seclusion*
     pursuant to *Civil Code Sect. 1708.8 (d)* and *Civil Code Section*
     *48 a. 2.*[16] -- resulting in triple damages of $92.28 million.
WHEREFORE, defendant Oliver HILSENRATH prays relief as set forth
below.

## SIXTH CAUSE OF ACTION

### (Hana HILSENRATH damages - invasion of privacy as part of prosecution of Janvrin v. Hilsenrath)

Plaintiff Hana HILSENRATH realleges and incorporates into this
cause of action each and every paragraph in this complaint.

69.  Hana HILSENRATH is a mother of six children, 4 of whom are
     minors, and does not work outside the home.

70.  As a legal result of the invasion of privacy by defendants
     Mrs. HILSENRATH has suffered fear, anguish, and illness; has
     been exposed to personal threats by shareholders of U.S.
     Wireless; and has suffered constant fear of retaliation and
     revenge to herself and/or her children.

71.  Mrs. HILSENRATH has also seen the structure and security of
     her family threatened by the disclosure of her family's
     private information, and has lost the vast majority of her
     personal wealth.

72.  As the result of defendants' actions, Mrs. HILSENRATH suffered
     loss of tangible assets in value of $7.3 million, which she
     requires to recover from defendants.

WHEREFORE, defendant Hana HILSENRATH prays relief as set forth
below.

---

[16] These type of damages do not preclude pursuit of multiple theories: *Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co., 596 F. Supp. 344*

## SEVENTH CAUSE OF ACTION

### (Hana HILSENRATH exemplary damages - invasion of privacy as part of the prosecution of Janvrin v. Hilsenrath)

Plaintiff Hana HILSENRATH realleges and incorporates into this cause of action each and every paragraph in this complaint.

73.   Hana HILSENRATH has suffered damages as the result of "intrusion of seclusion"[17].

74.   The TOTAL RELIEF sought under this cause of action include general, special and exemplary damages/punitive damages resulting from *Intrusion of Seclusion* pursuant to *Civil Code Sect. 1708.8 (d)* and *Civil Code Section 48 a. 2.*[18] -- resulting in triple damages of $21.9 million.

WHEREFORE, defendant Hana HILSENRATH prays relief as set forth below.

## EIGHTH CAUSE OF ACTION

### (Malicious prosecution of second case Janvrin v. Hilsenrath)

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into this cause of action each and every paragraph in this complaint.

75.   In 2002, NIXON at al, filed a new lawsuit against the HILSENRATHS and others on the knowingly false pretense that their did not know before the 2001 settlement that USWC initiated an investigation into Mr. HILSENRATH's financials.

76.   It was however NIXON at al themselves that instigated the investigation as also determined by the federal Court.

77.   This act of malicious prosecution lasted 5 years and ended only in March 2007.

---

[17] That a plaintiff has received damages for his claim of unreasonable public disclosure of private facts does not preclude an award of damages for his claim of intrusion upon seclusion: *Doe v. High-Tech Inst., Inc.*, 972 *P.2d 1060*

[18] These type of damages do not preclude pursuit of multiple theories, *Hubbard Business Plaza v. Lincoln Liberty Life Ins. Co.*, 596 F. Supp. 344

78. In the course of this malicious and knowingly frivolous lawsuit, NIXON were seeking over $7 million specifically from the HILSENRATHS.

79. NIXON were actively banking on the perceived weakness of the HILSENRATH's after the USWC scandal instigated by NIXON themselves.

> "In the case of the tort of malicious prosecution, the fundamental interest protected is that of every person to be free from unjustifiable and unreasonable litigation initiated without probable cause, and the corresponding duty is to refrain from initiating such unjustified litigation".[19]

80. In 2005, defendant Nixon Peabody with false declarations from MITCHELL and WESTREICH, sought to obtain a $7 million judgment against HILSENRATH from the Federal Court in California.

81. The HILSENRATHS lived for years with fear of a possible judgment of that size as the result of this bogus and malicious litigation.

82. Plaintiffs seek declaratory and exemplary damages from defendants in an amount in excess of triple that amount - $21 million.

WHEREFORE, defendants Hana and Oliver HILSENRATH pray relief as set forth below.

## NINTH CAUSE OF ACTION

### (Recommendation to Disbarment - WESTREICH, MITCHELL)

---

[19] *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 881-882, 254 Cal. Rptr. 336, 765 P.2d 498.

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into this cause of action each and every paragraph in this complaint.

83. Defendants WESTREICH and MITCHELL violated the oath taken as practitioners of law.

84. WESTREICH and MITCHELL knowingly abused the privileges of familiarity with the law, the legal process, the access to the Court and their privileges as officers of the Court to promote a crime, participate in it, aid and abet violations of legal, moral and ethical principles.

85. No Court, federal or otherwise, can anymore regard WESTREICH and MITCHELL as trusted officers of the Court.

86. No person can trust WESTREICH and MITCHELL to represent him or her in good faith.

87. No person should face WESTREICH and MITCHELL in Court as opponents knowing that principles of law, morals or ethics will not bar WESTREICH or MITCHELL from hurting him or her.

88. Defendants' WESTREICH and MITCHELL's actions brought them to a point of no return.

89. Plaintiffs request the Court's recommendation to bar defendants WESTREICH and MITCHELL from practicing law in federal and California Court.

## TENTHS CAUSE OF ACTION

### (Nixon Peabody – Order to compel: Special controls)

Plaintiffs Hana and Oliver HILSENRATH reallege and incorporate into this cause of action each and every paragraph in this complaint.

90. Defendant Nixon Peabody either actively participated or acted with reckless neglect by harboring WESTREICH and MITCHELL's conduct over seven years from 2000 to 2007.

91. One must worry that this large law firm with offices in various jurisdictions does not have the controls, or the

corporate standards or the corporate culture necessary to secure proper practice of law on its premises.

92. Plaintiffs request a Court order to compel defendant Nixon Peabody to introduce appropriate internal control systems targeted to prevent reoccurrence of events similar to those in the current case.

## SCIENTER

93. In addition to abovementioned courses of action, defendants NIXON, WESTREICH and MITCHELL acted in bad faith and had clear, provable knowledge that the allegations of impropriety against plaintiffs were false and misleading.

94. Defendants knew that the knowingly false and misleading accusations would adversely affected the financial situation of the plaintiffs, and adversely affected their ability to conduct business, control their lives and maintain their good name and good reputation in their community.

95. Defendants acted knowingly to financially, emotionally and socially hurt plaintiffs.

## PRAYER

96. By way of this complaint, Mr. and Mrs. HILSENRATH pray relief as follows:

   a. That this Court order defendants to pay plaintiffs Hana and Oliver HILSENRATH, for co-conspiring against them with Janvrin et al, an amount equal to $15 million in damages and prejudgment interest. This amount shall be equal to the federal Court recommended damages to be paid by Janvrin to the Hilsenraths for Janvrin's participation in the same blackmail conspiracy.

HILSENRATH V. NIXON PEABODY LLP                    -19-

b. That this Court order defendants to pay to plaintiff Mr. HILSENRATH for aiding and abetting the extortion scheme that lead to the 2001 settlement with their clients, an amount equal to his share of that settlement -- $7 million.

c. That this Court impose a constructive trust on any amounts reimbursed to plaintiffs in connection to the 2001 improper settlement.

d. That Mr. HILSENRATH recover damages for invasion of privacy and breach of governing statutes at least in the amount of $30.76 million.

e. That Mr. HILSENRATH recover exemplary damages resulting from intrusion to seclusion in an amount not less than $92.28 million.

f. That Mrs. HILSENRATH recover damages for defendants scheme to extort, defame and invade her privacy, at least in the amount of $7.3 million.

g. That Mrs. HILSENRATH recover exemplary damages resulting from defendants' intrusion to seclusion in an amount no less than $21.9 million.

h. That Mr. and Mrs. HILSENRATH recover damages and exemplary damages resulting from defendants' malicious prosecution in an amount no less than $21 million.

i. That plaintiffs recover prejudgment interest on sums with which they parted, and on all damages they recover.

j. That the Court recommends barring defendants WESTREICH and MITCHELL from practicing law in federal and California Court.

k. That the Court instructs defendant Nixon Peabody to introduce appropriate corporate controls such as to *prevent malicious practices by the firm in the future.*