# LIST OF EXHIBITS

**Exhibit A: Correspondence between US and Jersey governments establishing the destruction of records by Equity Trust personnel**

**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*11th Floor, Federal Building*    (415) 436-7200
*450 Golden Gate Avenue, Box 36055*
*San Francisco, California  94102-3495*    FAX:(415) 436-7234

December 12, 2006

BY FEDERAL EXPRESS, EMAIL AND FACSIMILE TO 202/514-0080

Ruth Payne, Esq.
Office of International Affairs
United States Department of Justice
1301 New York Avenue N.W.
Washington, D.C.  20005

Re:    Fourth Supplemental Request for Assistance in the Prosecution and Continuing
Investigation of Oliver Hilsenrath

Dear Ms. Payne:

On August 9, 2006, Paul Joseph sent a third supplemental request to Jersey regarding additional documents that Oliver Hilsenrath's prior attorney, Steve Kalar, sent to me.  Those documents (a) came from Equity Trust in Jersey, the Channel Islands, (b) were responsive to our original MLAT request dated November 10, 2003, and (c) were not produced by Equity to the Jersey authorities, and thus were not provided to us.  The documents include admissions by trust officers that they had a conflict of interest with Hilsenrath and other trust clients, characterization of the trusts as tax exempt accounts, and possible impeachment material of our main cooperating witness, Klarman.

As a result, Equity Trust reviewed its files again, and produced more documents that the Jersey authorities sent to us in November.

Following that production, Oliver Hilsenrath provided me with the enclosed court pleading. Attached to that pleading are additional documents that are responsive to our original MLAT request and were not provided by Equity Trust.  (Some of the attached documents were provided, and you can tell those documents because they bear the bates range JAG, which shows that they came from the Jersey Attorney General's Office.)

According to Oliver Hilsenrath, he has more documents that were provided in civil discovery that Equity Trust did not provide in response to the MLAT request.  As I mentioned in my third request, the documents that  he identifies are important to the investigation here, and the parties cross-examined witnesses during the depositions about topics in the documents.

1. Description of Evidence Sought.

Therefore, I submit this fourth supplemental request for documents that we asked for in our original MLAT requests and that were not provided.  As you can see by the court pleading that Mr.

Letter to Ruth Payne, Esq.
December 12, 2006
Page 2

Hilsenrath provided, the allegation is that Equity Trust provided Mr. Hilsenrath's private information in an attempt to give other clients of Equity an upper hand in their litigation against Mr. Hilsenrath. Issues about those clients – according to Mr. Hilsenrath's former attorney Steve Kalar – are relevant to Mr. Hilsenrath's defense.

Accordingly, not only should Equity Trust provide the documents (including any additional documents), but also it should provide an explanation about why documents were not provided in response to our previous MLAT requests.

Rebecca Boxall of the Jersey Attorney General's Office sent a supplementary notice to Equity dated August 17, 2006. That notice sufficiently describes the documents that are responsive to our original MLAT requests, so I do not reiterate our request here. You may also refer to Paul Joseph's request to the Attorney General dated August 9, 2006, which reiterates all of our requests for documents. Ms. Boxall is familiar with our request, as we have spent substantial time coordinating with the Jersey authorities about the production of these documents.

2. <u>Depositions</u>.

We previously conducted depositions, but – depending on how Equity Trust responds – we may want to depose the witnesses further. I refer to the witnesses and procedures set forth in our prior request for assistance dated April 19, 2005.

3. <u>Conclusion</u>.

Equity Trust has not provided all documents that we requested in our prior requests for assistance. We look forward to receiving the missing information promptly and an explanation for the omission. Because we have a January 29, 2007, trial date, this matter is urgent. We appreciate how helpful the Jersey authorities have been, and how promptly they have been able to respond to our requests in the past.

Very truly yours,

KEVIN V. RYAN
United States Attorney

LAUREL BEELER
Assistant United States Attorney

Enclosures



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*11th Floor, Federal Building*                          *(415) 436-6765*
*450 Golden Gate Avenue, Box 36055*
*San Francisco, California 94102*                      *FAX:(415) 436-7234*

April 9, 2007

Mr. Oliver Hilsenrath
822 Eastbrook Court
Danville, CA 94506

Dear Mr. Hilsenrath:

Enclosed is a copy of a letter dated March 5, 2007, from Equity Trust in response to the letters I sent them with your exhibits, asking for the file to be reviewed again in response to our MLAT request.

Very truly yours,

KEVIN V. RYAN
United States Attorney

LAUREL BEELER
Assistant United States Attorney

Enclosure

# EQUITY TRUST

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email   infoje@equitytrust.com

Law Officer's Department
Morier House
St Helier
Jersey JE1 1DD

Attn. Rebecca Boxall



2 March 2007

Our ref      :   JEV/VLO
**Subject**   :   **Investigation of Fraud (Jersey) Law, 1991 - Oliver Hilsenrath**

Dear Ms Boxall

We refer to our letter dated 29 January 2007.

We have now completed a review of our files in relation to the documents exhibited to the Notice of Motion enclosed with your letter dated 3 January 2007, and advise as follows in further response in relation to Exhibit's E, G & H:

Exhibit E
Whilst we have been unable to confirm whether this document was produced at an earlier date in response to a Production Notice or Supplementary Notice, to the best of our knowledge and belief we believe that a copy of a version of this document (which does not contain the hand written notes at the bottom of the page) was produced in response to the Supplementary Notice dated 13 October 2005.

Exhibit G
We have been unable to locate this document on our files and therefore to the best of our knowledge we believe that the document has not been produced by Equity for this reason.

Exhibit H
We confirm that we have been unable to locate this document on our files and therefore to the best of our knowledge we believe that the document has not been produced by Equity for this reason.

Yours sincerely

Justine Every
In-house Legal Counsel
Equity Trust (Jersey) Limited

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998
Registration No. 57583

**Exhibit B: Perkins' initial solicitation letter**

**Matheson Trust Company (Jersey) Limited**          *Aida Holdings*

A Member of the Jardine Matheson Group

| | |
|---|---|
| P.O. Box 316 | Telephone: 01534 888111 |
| Jardine House | Facsimile: 01534 888118 |
| 1 Wesley Street | Telex: 4192012JARJSY G |
| St. Helier | |
| Jersey JE4 8UD | |
| Channel Islands | |

Dr Oliver Hilsenrath                                    14 May 1996
32 Essex Court
Round Hill Country Club                                  JHP/VJJ
Alamo
CA 94507
USA

Dear Dr Hilsenrath

I write with further reference to our recent telephone conversation and your fax of 11 May 1996. I am grateful for the information provided concerning your personal background.

As promised, I now have pleasure in providing you with some details regarding this company and the nature of our services.

As you will see from the enclosed brochure, this company is part of the Jardine Matheson Group of Trust Companies, which are geared to combine asset management in its broadest terms with asset protection arrangements through the use of trust and corporate structures established and administered from a stable, low tax jurisdiction. Our group consists of six principal operating companies, located in Jersey Channel Islands, Bermuda, British Virgin Islands, Hong Kong, Labuan, Malaysia and Mauritius through which we are able to provide effective arrangements for the protection and management of a world-wide asset base, having regard to the varying demands and concerns of our international clientele. These operating companies are owned by Jardine Matheson Trust Corporation, a British Virgin Island holding company, which in turn is a direct subsidiary of the Bermuda parent of the Jardine Matheson Group.

We believe that this ownership structure itself is of significant appeal and importance to our clients, given that it avoids any ultimate connection with the main jurisdictions such as, for example, the United States of America or the United Kingdom. We further believe that our international trading background affords a depth of commercial experience, understanding and support to our trust and financial services.

Our parent company, Jardine Matheson Holdings, is, as I am sure you appreciate, an international service-related company incorporated in Bermuda, and headquartered in Hong Kong. Founded in 1832, the group has extensive business interests world-wide, falling into five main areas of financial services, marketing and distribution, engineering and construction, property and hotels and transport services.

The facilities of the Trust Group are particularly directed towards those individuals, family groups and indeed private companies who hold investments and assets away from the home base. We often find that although there may well be a focus on the merits of investment diversification, less attention is given to the establishment of an effective and efficient holding structure that will provide long term protection.

JAG 01602

A Trust Corporation registered in Jersey, Channel Islands. Registered No: 42712

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02693

**Dr Oliver Hilsenrath**                                          **14 May 1996**

Some of the aspects of trusts that are important in this respect are addressed in the accompanying paper which outlines the principal features of trusts and which may be of interest to you.

As you will see from our brochure, our services extend to the incorporation and management of companies established in a wide range of jurisdictions. Our facilities are provided for both investment holding and trading companies and in addition to the maintenance of the necessary statutory records will extend to the full management of the underlying affairs of the company.

Also enclosed is a Questionnaire and a Fee Schedule in connection with the incorporation and ongoing administration of a British Virgin Islands registered company. As I explained over the telephone, if we are required to provide full services, this will include the provision of three Directors, all of whom are directors of Matheson Trust Company (Jersey) Limited, the Company Secretary, Nominee Shareholders, the Registered Office in the BVI and Administrative Office here in Jersey. We will establish bank accounts in the name of the BVI company in whatever currencies are required, the authorised signatories of which will again be officers of Matheson Trust Company. It is not our policy to allow third parties to be signatories over bank accounts; neither do we entertain 'mixed' Boards of Directors. There are several reasons for adopting this policy but primarily, we take our responsibilities as directors of the company seriously and all major decisions regarding the company's activities, including the administration of its financial affairs must be clearly seen to rest with the Board.

In the circumstances you may well ask what recourse you would have if for any reason you were unhappy with our administration of the company's affairs at some future date. I would simply say that, as the actual beneficial owner of the company you have the necessary power to appoint alternative directors in place of our officers and instruct us to transfer the administration to another organisation. A copy of our standard Company Management Agreement is enclosed which I think you will agree clearly sets out both our responsibilities as the administrators of the company and what is required of you as the client.

I believe I also mentioned that the setting up costs and ongoing administration fees for either a Jersey registered or BVI registered company were broadly similar although there are no disclosure requirements in the BVI, whereas if we incorporate a Jersey company the name of the beneficial owner must be given to the local Financial Services Department. Nevertheless, this is not a matter of public record and at the end of the day the choice of jurisdiction is largely down to the client's preference. If you have no particular concerns, I would like to suggest that a BVI company would be most appropriate in your particular circumstances.

Turning now to the question of ownership, I note that your children are all minors. Therefore I suggest that you and your wife be named jointly so that, in the event of the demise of one or other of you, the survivor will automatically become the sole owner of the issued share capital of the company and therefore its underlying assets. Once the children come of age, we can review the position. Alternatively, depending on the sums involved, you may wish to contemplate creating a trust into which the company shares could be settled. Please refer to the enclosed paper entitled 'Features of a Trust'.

Finally, if the proposed company was to be used for the purpose of investing funds and holding securities, it would be perfectly in order for the directors of the BVI company to appoint an Investment Manager such as the gentleman in New York referred to in your fax. Obviously we would report to you on a regular basis in accordance with guidelines which we would need to establish with you.

**JAG 01603**

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
**02694**

**Dr Oliver Hilsenrath**                                                    14 May 1996

I hope that I have addressed the main issues which may be of interest and concern to you at this early stage, although I am sure you will have further questions once you have had an opportunity to consider this letter and the enclosures. I therefore look forward to hearing from you again in due course.

Yours sincerely,

John H Perkins
Senior Manager

Encl

JAG 01604

CONFIDENTIAL PURSUANT
TO SECTION 24 (d)
02695

**Exhibit C: The Equity Trust Tax Wrapper**

# IN–sight

 EQUITY TRUST

| Newsflash | Friday 28 November 2003 | Issue 48 / 2003 |

## US Tax Efficient Wrappers

In selecting an investment vehicle, **many investors often have several significant priorities. These may include: -**

- maintaining a tax-efficient structure
- safety and security of investment capital
- having some control over investment decisions
  confidentiality considerations especially with regard to legitimate but limited disclosure and reporting to the relevant governmental authorities.

For the US persons (i.e. US citizens or one considered a US tax "resident") finding an investment product that meets all of these goals is rather difficult.  US persons are subject to income tax on their worldwide income, that is, they must pay tax on all varieties of income items regardless of the geographic source.  US persons are required to provide detailed information to the US government concerning their interests in foreign bank accounts and private foreign corporations.

A so-called "insurance wrapper" is a specific insurance fund, which is designed to enable more investment choice, but no mixing of funds.

This concept is illustrated as follows:-

Insurance company opens Investment accounts



Through a tailored "insurance wrapper" package, an investor can, in essence, place his own asset portfolio into a tax-efficient investment structure, without these assets being mixed with others. The assets so transferred constitute the premium paid for the insurance policy. In effect, the investment assets are "paid" to the insurance company as a premium, and the insurer issues an insurance policy to the owner.  Income earned on the assets will grow tax-free so long as the assets remain "wrapped" within the insurance policy structure, and providing the right insurance vehicle and asset allocation is used for the relevant country tax benefits. The policy holder may be able to direct investments.  The policy may also be able to pay out life insurance proceeds to a beneficiary tax-free.  As with other life insurance policies, the policy can have certain flexible features, for example, the investor can borrow against the policy.

**ENQUIRIES:** Vincent Kwok (2106 9323), Joey Lam (2106 9309), Edith Fok (2106 9319), Brandon Tang (2106 9338), Lisa Cheung (2106 9329) and Irene Chan (2106 9313)

**EQ INTERNATIONAL**

16/F Standard Chartered Bank Building, 4-4A Des Voeux Rd Central, Hong Kong
Tel +852 2525 5090, Fax +852 2523 5105, E-mail: corpsaleshk@asia.equitytrust.com

A branch of EQ Corporate Management (HK) Ltd

This publication is of a general nature only and is not intended to be relied upon as, nor to be a substitute for professional advice or in formulating any business decisions without first seeking such advice.  Accordingly, the material should be viewed as a general guide, and professional advice should be obtained for specific situations.  No liability can be accepted by the Equity Trust group in this respect.

© 2003 Equity Trust    All rights reserved.    Printed in Hong Kong

If you do not wish to receive further copies of IN-sight, please kindly mark down your company name and fax number on this sheet and then then return by fax on +852 2523 5105.

**Exhibit D: Melvyn Kalman advertising his skills**

## SELECTED COMPANIES

# WALBROOK OFFERS INDEPENDENT TRUST AND COMPANY SOLUTIONS



Melvyn Kalman, Associate Director of Walbrook

**W**albrook is a leading independent fiduciary services company offering both private client and corporate solutions to a global client base. Established in 1977 by Deloitte and Touche, Walbrook became wholly independent in December 2003 following a successful management buy-out, backed by Hermes Private Equity.

Walbrook has offices in **Jersey**, **Guernsey** and **Isle of Man**, and more than £5 billion of assets under administration, valued at cost. The company employs a team of 180 highly qualified professionals with expertise in trust and company management, employee benefit and share trusts, fund management, international executorships, tax, real estate, family offices and investment consulting. Walbrook is regulated by the Jersey, Guernsey and Isle of Man financial services commissions and the business is therefore conducted with the highest regulatory standards.

Walbrook focuses on developing close relationships with clients and delivering a quality solution. As a result client matters are structured around geographical areas (Europe, Israel, Far East, United Kingdom and Africa) or specific industries (managed trust companies, real estate solutions, employer solutions, investment consulting and fund management). This ensures that professionals at Walbrook all have a comprehensive understanding of either the clients' home jurisdiction or the industry that they operate in and are therefore

*"We have developed a solid reputation in delivering innovative tax solutions"*

able to deliver exceptional technical advice where necessary.

Over many years, Walbrook has built up a considerable Israeli client base and they undertake regular visits to Israel to meet and advise their clients. They work extensively with third party advisers in **Israel** and elsewhere, many of whom have referred their clients to Walbrook over the years. **Melvyn Kalman**, who joined Walbrook last year says, "We value this confidence and seek to enhance

existing relationships by working as an integral part of the client's overall advisory team. Furthermore our independence allows us to act in the best interests of our clients and ensures that any advice given is objective."

In a rapidly changing market and regulatory environment, the teams at Walbrook have the expertise to identify and exploit opportunities and meet the wide-ranging needs of Israeli clients, which includes both corporate and private individuals. Melvyn continues, "Specifically, we have developed a solid reputation for delivering innovative tax solutions. One example is a product originally developed for the UK market, the Protected Cell Solution, which provides clients with a solution to mitigate capital gains tax within an investment portfolio."

Walbrook also has the scale and a depth of experience for complex and large transactions and has built up extensive experience in property holding and development structures, mainly in the UK.

Melvyn continues, "Israel is a strongly developing market and we are optimistic about its growth prospects. Our focus going forward is to continue to develop our Israeli client base and nurture our long standing relationships with the Israeli business community. "

For more information on products and solutions offered by Walbrook, please contact **Melvyn Kalman** +44 (0) 1534 711111.

**Exhibit E: Insinger conflict of interest**

**Matheson Trust Company (Jersey) Limited**
A Member of the Jardine Matheson Group

Memorandum

| | | |
|---|---|---|
| To | Celine Gimenez - c.c. Melvyn Kalman, David Chalmers-Hunt, Peter Zajac | 28 July 2000 |
| From | John H Perkins | JHP/MFE/CO857 |

**Oliver Hilsenrath and David Klarman**

Having identified a potential conflict of interest the Directors, JHP and MK, have taken advice from Ogiers & Le Masurier concerning our position acting as Officers of various BVI companies, including those of which the above-named are the beneficial owners and which entities own shares in US Wireless Corporation.

As a result, we have taken the decision to resign as Officers of the OH/DK owned companies and we will cease to provide any further services, including administration address, nominee shareholders, signatories over the accounts, etc.

OH was advised of our decision during a telephone conversation on 27 July and JHP will be writing formally to OH/DK requesting them to nominate alternative officers who we will appoint in our stead. There is, however, another option and it may be that the beneficial owners will request us to close down their companies altogether and transfer the assets out.

To the best of my recollection, OH beneficially owns Borazon Limited and Oliver Hilsenrath Family Investments Limited and DK owns KS Legal Consultants Limited (and possibly Craiglands Limited?) There are also at least two other entities which were formed last year at the request of DK, namely US Wireless International Inc and another BVI company (name to be identified).

In the light of current developments, I should be grateful if Celine would ensure that all of the companies' book-keeping records are posted 100% to date and also request Corporate Department to ensure that the statutory records are in order as we will either be transferring these cases out very shortly, or possibly winding them down, as mentioned above.

At the same time, Celine please check the outstanding fees' position and advise me of the outcome.

Thanks and regards

*J. Perkins*

*Please also see attached copy faxes recently rec'd. per OH.*

*31/7/00*

**Exhibit F: Equity's list of Hilsenrath structures and dates of setup**



# OLIVER HILSENRATH

| | INCORP. DATE | STRUCK OFF DATE | ACTIVITIES | ASSETS | ITC FEES O/S AT 18.12.00 | BVI FEES O/S at 18.12.00 |
|---|---|---|---|---|---|---|
| Borazon Limited (ex Aida) | 10.5.96 | n/a | Yes | None held | £240.41 less unallocated cash of £1,282.51 | tbc  NONE |
| Oliver Hilsenrath Family Investments Limited | 26.10.98 | n/a | Yes | Morgan Stanley $15.5M held in bonds no cash available | All paid | $810.00 |
| Star Anise Limited | 31.3.99 | n/a | Yes | None held | £513.34 | All paid |
| Telecom Associates (T.A.) Limited | 15.7.97 | n/a | Yes | None held | £3,332.07 less unallocated cash of £263.00 | tbc  NONE |
| US Wireless (half owned with D Klarman) | 25.6.99 | 1.11.00 | No | None held | £487.54 | $1,740.00 |

CONFIDENTIAL PURSUANT TO SECTION 24 (d) 00877

**Exhibit G: Equity letters refusing to give access to funds**

# EQUITY TRUST
## fax

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel   +44 (0) 1534 636211
Fax   +44 (0) 1534 636215
Email  infojc@equitytrust.com

| | |
|---|---|
| To | Mr Barry J Portman & Mr Steve G Kalar |
| Fax number | 00 415 436 7706 |
| From | Mr Grant Brown |
| Subject | The Firefly Trust |
| Date | 20 February 2006 |

No. of pages     1

Dear Mr Portman and Mr Kalar

***The Firefly Trust (the "Trust")***

I write with reference to your fax dated 14 February 2006.

From your fax, I note that Mr Hilsenrath does not wish to be represented by a public defender in the criminal proceedings against him the United States and that instead he wishes to retain your firm as private counsel. Clearly, it is a matter for Mr Hilsenrath as to whom he wishes to appoint to defend him in these proceedings (since the proceedings are against him in his personal capacity) and what arrangements he wishes to make to discharge your firm's fees and costs.

I confirm that it is the case that Mr Hilsenrath has requested the Trustee to make Trust funds available to him in order that he may defend the proceedings against him and that the trustee of the Trust has declined to acquiesce to his request. The trustee of the Trust has reconsidered your further request and declines to accede to your request. The Trustee does not hold the Trust property for Mr Hilsenrath under a bare trust or nominee arrangement and Mr Hilsenrath and / or any representative of Mr Hilsenrath cannot instruct the Trustee to adopt a particular course of action in order to benefit him.

The trustee of the Trust is the legal owner of the Trust property and is obliged by fiduciary and statutory duties (inter alia) to act impartially in the interests of all of the beneficiaries of the Trust (in the sense of fairly and disinterestedly) and to preserve and enhance the Trust assets. The trustee of the Trust may exercise its dispositive powers in its absolute and unfettered discretion so that the trustee is not obliged to disclose its reasons or deliberation process.

Finally, there is no question of the Trust's "seizure" of its own assets.

Yours sincerely

Grant Brown
Director
Equity Trust (Jersey) Limited

The information contained in this facsimile message is intended only for the use of the persons or entity to whom it is addressed and may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you read this message and are not the addressee you are notified that use, dissemination, distribution or reproduction of this message is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998 Registration No. 57583

# EQUITY TRUST

## fax

Equity Trust (Jersey) Limited
Equity Trust House, P.O. Box 546
28-30 The Parade, St Helier, Jersey JE4 8XY
Channel Islands

Tel    +44 (0) 1534 636211
Fax    +44 (0) 1534 636215
Email  infoje@equitytrust.com

| To | Mr Barry J Portman & Mr Steve G Kalar |
| Fax number | 001415 436 7706 |
| From | Mr Grant Brown |
| Subject | The Firefly Trust |
| Date | 06 March 2006 | No. of pages | 1 |

Dear Mr Portman and Mr Kalar

**The Firefly Trust (the "Trust")**

I write with reference to your fax dated 03 March 2006.

I note your position as an Assistant Federal Public Defender paid by the United States government. I further note your comment that Mr Hilsenrath does not wish to be represented by a public defender in the criminal proceedings against him in the United States.

I reiterate the point in my previous fax that it is a matter for Mr Hilsenrath as to whom he wishes to appoint to defend him in these proceedings and what arrangements he wishes to make to discharge the corresponding fees and costs.

Mr Hilsenrath does not have a fixed proprietary interest in the property comprised in the Trust fund. He therefore has no entitlement to demand that the Trustee makes any distribution of Trust property to him.

Pursuant to the **Trusts (Jersey) Law 1984 (as amended)**, subject to the terms of the trust and any order of the court (the "**Court**"),[1] the Trustee is not under any obligation to disclose his deliberations as to the manner in which he has exercised a power or discretion and the reason for any particular exercise of such power or discretion.

Should Mr Hilsenrath, as a beneficiary of the Trust, wish to challenge the resolution of the Trustee not to release funds to him then we advise that he appoints Jersey counsel to make an application to the Court on his behalf accordingly.

Yours sincerely

Grant Brown
Director
Equity Trust (Jersey) Limited

---

[1] The court means the Inferior Number of the Royal Court in Jersey

The information contained in this facsimile message is intended only for the use of the persons or entity to whom it is addressed and may contain information that is confidential and may be legally privileged and exempt from disclosure under applicable laws. If you read this message and are not the addressee then any use, dissemination, distribution or reproduction of this message is prohibited. If you have received this message in error, please notify us immediately and return the original message to us.

Regulated by the Jersey Financial Services Commission and registered under the Financial Services (Jersey) Law 1998
Registration No. 57383

**Exhibit xx: Hilsenrath letter to Equity to release funds**

## Oliver Hilsenrath

**From:**      "A/O Hilsenrath" <hillcom@netvision.net.il>
**To:**       "Caroline Bougeard" <cbougeard@je.equitytrust.com>
**Cc:**       "Victoria Loraine" <vloraine@je.equitytrust.com>; "Grant Brown" <gbrown@je.equitytrust.com>
**Sent:**     Thursday, June 15, 2006 9:01 AM
**Subject:**  Re: The Firefly Trust and Klonoa Limited

Dear Caroline,

We are in receipt of your request for payment of tens of thousands of
Dollars of fees for the management of the Firefly Trust, a Trust that holds
assets for the Hilsenrath family.

Hana and I are formally requesting you to distribute all assets of Firefly
to us immediately and close the Firefly Trust.

We have done so since December 2004 at which point we covered all fees of
Firefly and its holdings for about $13,500.

If you wish to receive a request (again) by mail or notarized, please let me
know.

Since December 2004, you refuse to distribute the assets without disclosing
to us the reason for which you do so.

Hana and I have initiated a formal inquiry through the US Department of
Justice with the Jersey Crown Advocate to determine if the US government, as
part of an ongoing litigation, has requested a freeze on our trust or if
such formal freeze exists in Jersey by the Jersey government and we received
a formal transcribed acknowledgement by AUSA Laurel Beeler of the Northern
District of California in front of Federal Judge William Alsup that there
exists NO freeze on our assets in Jersey.

Therefore the freeze on our assets is one that is imposed by Equity Trust
for reasons you refused to explain.

It is cynical that not only you refuse my family the assets, against our
repeated requests, and amid urgent needs that my wife, our children and I
have for the funds, but you want to charge us now tens of thousands of
Dollars for fees to manage a trust we do not want you to manage for us.

In your letter you also threaten us that, not only you refuse for no good
reason and no stated reason to distribute our assets to the beneficiaries,
but you are now about to destroy the assets to pay yourself fees.

In the last 18 months, Hana and I together with our 6 children have done an
expensive move from Israel to the US, two of our children had to undergo
expensive surgery in the US, another two enrolled in college here in the US
and we needed the trust funds to pay for all those not to mention the legal
expenses here caused in  part by Equity Trust.

You have no shame, you have no compassion, you and your colleagues shall be forever damned in the eyes of my family, our friends and everybody else who was exposed to your conduct.

In conclusion, Hana and I as the adult beneficiaries of Firefly and on behalf of all the Firefly beneficiaries are formally requesting the distribution to us of all assets of Firefly trust. We do not allow you to charge for any expenses and fees for the management of the trust and do not allow you to use any assets, funds or others to pay yourself fees. We do not trust you and we do not want you, now and for the last 18 months to manage any asset of ours.

I expect your immediate reply to arrange for the distribution of the assets. We are all looking forward to the day when we can put Equity Trust behind us.

Hana and Oliver Hilsenrath.

**Exhibit YY: Hilsenrath letter to Equity: you will be sued**

## Oliver Hilsenrath

**From:**     "A/O Hilsenrath" <hillcom@netvision.net.il>
**To:**       "Victoria Loraine" <vloraine@je.equitytrust.com>
**Cc:**       "Caroline Bougeard" <cbougeard@je.equitytrust.com>
**Sent:**     Thursday, October 05, 2006 1:27 AM
**Subject:**  Re: The Firefly Trust

Dear Victoria,

Thank you for the new draft.

I will review and revert shortly.

I have no problem with your standard statement as long as Equity is clear of the following:

1. The current deed of appointment and indemnity shall not preclude us from litigating Janvrin et al vs.. Hilsenrath et al (initiated by Equity unbeknownst to us in 2002) including to litigate the counterclaim that is expected to add Equity Trust, Nixon Peabody (your law firm) and others as counterdefendants.

2. The current deed of appointment and indemnity shall not preclude us from claiming that the refusal to distribute assets in the last 2 years was inappropriate.

3. The current deed of appointment and indemnity shall not preclude us from claiming that Euro 40,000 were inappropriately charged out of the sale of our total share in Stansfield as per our sales agreement with Adv. Leonard Judes and as per out trust agreement with him and his management team.***



Please let me know how you suggest to memorialize this.

Best regards,

Oliver.